SAMUEL R. SHIELCRAWT et al., Suing on Behalf of Themselves and All Other Stockholders of Corn Products Refining Company, and on Behalf of CORN PRODUCTS REFINING COMPANY, Appellants, *v.* GEORGE M. MOFFETT et al., Defendants, and CORN PRODUCTS REFINING COMPANY, Defendant-Respondent.

First Department, November 3, 1944.

*Samuel Gottlieb* of counsel (*1. Gainsburg* with him on the brief; *Oscar Schleiff,* attorney), for appellants.

*Walter A. Dane* of counsel (*Samuel A. McCain,* attorney), for Corn Products Refining Company, respondent.

*Alexander L. Strouse, amicus curiæ.*

Order affirmed, with twenty dollars costs and disbursements.

CALLAHAN, J. (dissenting). One of the questions presented on this appeal is whether section 61-b of the General Corporation Law (L. 1944, ch. 668, eff. April 9, 1944) was intended to apply to pending actions.

The present stockholders' derivative suit was commenced in March, 1940. It was about to proceed to trial in May, 1944, after the completion of numerous preliminary steps, when the application resulting in the order appealed from was first

presented to Special Term. The order granting the motion halted the trial and required plaintiffs to furnish security for costs in the sum of $25,000 unless before a date fixed other plaintiffs, owning 5% of the corporate stock or shares of the corporation valued in excess of $50,000, joined the present plaintiffs in the suit. The action was stayed until this order was complied with.

It thus appears that section 61-b has been applied to an action initiated long before the adoption of that law.

Forgetting for the moment any attempt at nomenclature in order to classify the new law as one affecting " substantive " rights, or one affecting merely the remedy and thus being " procedural " in nature, it is plain that the law in question imposes new and drastic restrictions on the rights of stockholders of a certain class to sue on behalf of their corporation. Undoubtedly this law was passed to secure an effective weapon against derivative suits by stockholders holding only a small percentage of the total corporate shares. Prior to its adoption, any stockholder could sue in such a capacity without furnishing security for defendant's expenses, including attorney's fees, irrespective of the number of shares held or the value thereof in the market. The new law, if applied here, would have the practical effect of nullifying things already done by plaintiffs as of right when this action was brought. Common sense tells us that to require the posting of $25,000 as security for such expenses is, in effect, to deprive the owner of a small number of shares of his day in court. So applied section 61-b would do more, therefore, than impose a new measure of costs. It would limit — if, indeed it did not prevent — recourse to the courts by these plaintiffs (unless joined by others) for the purpose of pursuing to completion a recognized remedy already prayed for. Thus the statute would not be directed solely to future steps and stages of the pending litigation. Substantial rights of these stockholders, if not of the corporation, would be affected by making the power to enforce their rights more burdensome through the agency of placing new and onerous conditions on the further prosecution of pending suits. Under the circumstances, I think it is unnecessary to hold that the statute affects " substantive " rights. Insofar as this action is concerned, it seems sufficient that, as construed, the statute reaches backwards and affects the rights of the plaintiffs by restricting, to the extent of practically extinguishing, existing remedies already sought. Because it would have this effect of thus limiting the right to the remedy, the law should not be applied retrospec-

tively, at least as to pending actions, in the absence of an unequivocal expression of the legislative intent that it should be so applied.

In the recent case of *Hastings* v. *Byllesby & Co.* *(Granbery)* (293 N. Y. 413) it was pointed out that statutes which cut off a remedy are not to be applied retrospectively unless the Legislature, by unequivocal expression in the statute itself, indicates that it was the legislative intention that they should have such application.

Assuming that this statute affects merely the remedy, this would not mean that retrospective application of it is justified in existing actions in every instance. The rule is stated in *Matter of Berkovitz* v. *Arbib & Houlberg* (230 N. Y. 261, at p. 270) as follows: " Changes in the form of remedies are applicable to proceedings thereafter instituted for the redress of wrongs already done. They are retrospective if viewed in relation to the wrongs. They are prospective if viewed in relation to the means of reparation (*Lazarus* v. *Metr. E. R. Co.,* 145 N. Y. 581, 585; *Laird* v. *Carton,* 196 N. Y. 169; *Brearley School, Ltd.,* v. *Ward,* 201 N. Y. 358, 363). A different problem arises when proceedings are already pending. There is then a distinction to be noted. The change is applicable even then if directed to the litigation in future steps and stages (*Lazarus* v. *Metr. E. R. Co., supra; Lamport* v. *Smedley,* 213 N. Y. 82, 86). It is inapplicable, unless in exceptional conditions, where the effect is to reach backward, and nullify by relation the things already done (Maxwell Interpretation of Statutes [5th ed.], pp. 348, 370; *Reid* v. *Mayor, etc., of N. Y.,* 139 N. Y. 534; *U. S. Fidelity & G. Co.* v. *Struthers Wells Co.,* 209 U. S. 306; *Auditor General* v. *Chandler,* 108 Mich. 569, 571). There can be no presumption, for illustration, that a statute regulating the form of pleadings or decisions is intended to invalidate pleadings already served, or decisions already filed (Gen. Construction Law [Cons. Laws, ch. 22], secs. 93, 94). We speak, of course, of the principles that govern in default of the disclosure by the legislature of a different intent. Nice distinctions are often necessary (*Jacobus* v. *Colgate,* 217 N. Y. 235). The word ' remedy ' itself conceals at times an ambiguity, since changes of the form are often closely bound up with changes of the substance (*Jacobus* v. *Colgate, supra,* at p. 244; *Isola* v. *Weber,* 147 N. Y. 329). The problem does not permit us to ignore gradations of importance and other differences of degree. In the end, it is in considerations of good sense and justice that the solution must be found (Maxwell, *supra,* pp. 348, 370)."

In the light of the rules thus expressed, we may examine the present statute to determine whether there is contained therein any unequivocal disclosure by the Legislature of an intention to have this law applied to pending suits. We find that section 61-b says that it is to apply to actions "instituted or maintained" in the right of a corporation. The word "instituted" clearly has a prospective import. Though the word "maintained", standing alone, might connote an intention to include existing suits, it would equally indicate reference to future actions. When we find these two words joined together as descriptive of the kind of suit to be affected, the resulting phrase "instituted or maintained" is far from being expressive of an unequivocal intention on the part of the Legislature to grant the right to arrest suits already brought.

Looking to the enacting clause we find that chapter 668 of the Laws of 1944 was to take effect immediately. Ordinarily such a provision denotes futurity of application. Contrasted with this enacting clause, we find that in adopting section 61-a (a statute expressly referred to in section 61-b, but passed in an earlier year) the Legislature did not leave to conjecture the question of the effect of section 61-a on pending actions, but specifically provided that the latter section was to apply to pending actions. (L. 1941, ch. 350.) It is argued that as these two sections are *in pari materia,* and as section 61-a provides the right of directors to be compensated by their corporation in existing suits, section 61-b must likewise be construed so as to permit security to be obtained by the corporation in such pending suits. Logically, this argument is not without its weakness, for there is no necessary relation between the intention of one Legislature in securing to directors the right of compensation from their corporation, and the intention of a different Legislature in granting to a corporation the right to compel plaintiffs to furnish security to the corporation for any moneys to be paid.

Respondents point out that, in an early draft of the bill which later became chapter 668 of the Laws of 1944, the proposed law read that it was to apply "in any action hereafter instituted or maintained", and that before its adoption the word "hereafter" was deleted by amendment. When we desire to ascertain the legislative intent, our primary duty is to take the language used in the statute as adopted, and determine its ordinary meaning. The very necessity for resort to arguments of the nature advanced by respondents to support the construction for which they contend is an admission that

the intention of the Legislature is obscure rather than clear and unequivocal. If it was the Legislature's purpose to have section 61-b applied to pending suits, it could have made such intention clear by the use of an enacting clause similar to that found in section 61-a. At least we must agree that there is no unequivocal expression of intention to apply section 61-b to pending actions found in the latter statute itself. Under the circumstances I dissent from the holding that section 61-b should be made applicable to the present plaintiffs. Having so construed the law, I find it unnecessary to discuss the questions of constitutional law raised by appellants.

The order appealed from should be reversed, and the motion denied.

MARTIN, P. J., TOWNLEY and GLENNON, JJ., concur in decision; CALLAHAN, J., dissents and votes to reverse and deny the motion in opinion in which COHN, J., concurs.

Order affirmed, with twenty dollars costs and disbursements. No opinion. [See *post,* p. 904.]