NOEL ASSOCIATES, INC., et al., Plaintiffs, *v.* CHARLES E. MERRILL et al., Defendants.

Supreme Court, Special Term, New York County, November 30, 1944.

*Jackson, Nash, Brophy, Barringer & Brooks* for Safeway Stores, Inc., defendant.

*Abraham N. Geller* for Noel Associates, Inc., and others, plaintiffs.

*Herman Sulken* for Murray Picard, plaintiff.

*David Haar* for Samuel Lemkin, intervener, plaintiff.

*Unger & Pollack* for Simon Lefcort, intervener, plaintiff.

*George Z. Medalie* for Charles E. Merrill and others, defendants.

*Dwight, Harris, Koegel & Caskey* for Richard E. Dwight and others, defendants.

*Elisha Hanson* for Lingan A. Warren and others, defendants.

SHIENTAG, J. In July, 1943, plaintiffs commenced this deriva-tive stockholders' action on behalf of Safeway Stores, Inc., which, as required by law, was joined as a party defendant. (*Flynn* v. *Brooklyn City R. R. Co.,* 158 N. Y. 493.)

On May 5, 1944, the defendant Safeway Stores made this motion for an order directing the plaintiffs to deposit security in the sum of $150,000 or in such other amount as this court shall determine. The motion was made pursuant to the pro-visions of section 61-b of the General Corporation Law (L. 1944, ch. 668, approved April 9, 1944, which by its terms was to " take effect immediately ").

Section 61-b provides as follows:

" 61-b. *Security for expenses.* In any action instituted or maintained in the right of any foreign or domestic corporation by the holder or holders of less than five per centum of the out-standing shares of any class of such corporation's stock or vot-ing trust certificates, unless the shares or voting trust certifi-cates held by such holder or holders have a market value in excess of fifty thousand dollars, the corporation in whose right such action is brought shall be entitled at any stage of the proceed-ings before final judgment to require the plaintiff or plaintiffs to give security for the reasonable expenses, including attorney's fees, which may be incurred by it in connection with such action and by the other parties defendant in connection therewith for which it may become subject pursuant to section sixty-one-a of this chapter, to which the corporation shall have recourse in such amount as the court having jurisdiction shall determine upon the termination of such action. The amount of such secur-ity may thereafter from time to time be increased or decreased in the discretion of the court having jurisdiction of such action upon showing that the security provided has or may become inadequate or is excessive."

The Appellate Division of this department, two justices dis-senting, has recently sustained the constitutionality of this sec-tion, held that it was retroactive in operation, and that it applied to derivative stockholders' actions pending at the time of its enactment. Leave was granted to appeal to the Court of Appeals. (*Shielcrawt* v. *Moffett,* 268 App. Div. 352, affg. 49 N. Y. S. 2d 64, leave to appeal granted 268 App. Div. 904.*) The decision of the Appellate Division I am bound to follow on this motion.

---

* Revd. with opinion 294 N. Y. 180.—[REP.

Three related motions have this day been granted by me over the opposition of the defendant Safeway Stores: a motion by Noel Associates, Inc., one of the original plaintiffs, for leave to discontinue; and two motions by Samuel Lemkin and Simon Lefcort, respectively, for leave to intervene as parties plaintiff. For the purposes of this motion, it is conceded that these two plaintiff interveners held stock in Safeway Stores at the time of the commission of the wrongful acts complained of, the present market value of which stock amounts, in the aggregate, to the sum of about $30,500.

When the action was instituted, the plaintiff Murray Picard held seven shares of the common stock of Safeway Stores. These shares were owned by him at the time of the transactions complained of, and have a present market value of approximately $350. After the motion for security was made, Picard purchased 100 additional shares of common stock of Safeway Stores, having a market value of $4,850, and 180 shares of preferred stock with a market value of $20,160. There is a controversy on this motion as to whether the stock purchased by Picard after the motion was made may be added to his other holdings and to the holdings of the two interveners. If so, the aggregate of the stockholdings of the plaintiff Picard and of the two interveners is in excess of $50,000, and, under section 61-b, no security would be required.* Obviously, Picard made his recent purchases so that he and the other plaintiffs joining with him would come within the exception of the statute.

The moving defendant contends that Picard's recently purchased stock should not be so counted, on the ground that section 61-b should be read in conjunction with an amendment to section 61 of the General Corporation Law passed at the same session of the Legislature as section 61-b, both bills being approved by the Governor on the same day (L. 1944, ch. 667, approved April 9, 1944, which by its terms was to " take effect immediately ").

The 1944 amendment to section 61, and section 61-b, will be better understood if they are read in the light of certain related sections of the General Corporation Law: section 60, the original section 61, and section 61-a, the last-named section having been added in 1941 (L. 1941, ch. 350).

---

* It is unnecessary to consider the further point urged by the moving defendant that Picard should not be allowed to count the 100 shares of Safeway common which he recently purchased because those shares were acquired from the defendant Merrill, who is barred from attacking the transaction alleged in the complaint. Without counting those shares the holdings of Picard and of the two interveners have a market value in excess of $50,000.

Section 60, so far as here pertinent, provides in substance that an action may be brought against the directors or officers of a corporation for waste, mismanagement or breach of fiduciary duty generally.

Before the amendment of 1944, section 61 provided, in substance, that an action for the relief prescribed in the preceding section may be brought by the corporation or by a director or officer of the corporation. The amendment of 1944 added the following to section 61: '' In any action brought by a shareholder in the right of a foreign or domestic corporation, it must be made to appear that the plaintiff was a stockholder at the time of the transaction of which he complains or that his stock thereafter devolved upon him by operation of law.''

Section 61-a, added in 1941, by its terms was to take effect immediately, and contained a specific provision that it was to be applicable to pending actions. It provided, in substance, that in any action, suit or proceeding against one or more officers or directors of a corporation, brought in its behalf by one or more stockholders, the reasonable expenses, including attorney's fees, of any party plaintiff or party defendant, incurred in connection with the successful prosecution or defense of such action, suit or proceeding, shall be assessed upon the corporation.

Entirely apart from the statute, the courts of equity of this State have long recognized the right of a stockholder, under certain conditions, to sue on behalf of his corporation for wrongs claimed to have been done to it by its officers or directors in breach of their fiduciary duty. (*Brinckerhoff* v. *Bostwick et al.*, 88 N. Y. 52; *Holmes* v. *Camp*, 180 App. Div. 409, 412; Simpson on Fifty Years of American Equity, 50 Harv. L. Rev. 171, 190.) The object was to enable the minority shareholder to '' remedy or prevent a wrong to a corporation by its officers or directors when the corporation, because it is controlled by the wrongdoers or for other reason, fails and refuses to take appropriate action for its own protection '' (*Isaac* v. *Marcus*, 258 N. Y. 257, 264). The remedy sought, to be sure, was for the wrong done the corporation; the primary cause of action belonged to the corporation, and recovery must inure to the benefit of the corporation. (*Isaac* v. *Marcus, supra.*) A derivative action would not lie, therefore, where the corporation brought suit itself. (*General Investment Corp.* v. *Addinsell*, 255 App. Div. 319.)

Individual stockholders had the right to institute suit only after demand therefor had been made to the directors and they refused to proceed, or upon alleging such facts as would

show that a demand would be futile. (*Guttmann* v. *Conda Co.,* 249 App. Div. 621; *Continental Securities Co.* v. *Belmont,* 206 N. Y. 7.)

The right to sue by way of a derivative stockholder's action was not dependent upon the number of shares held. (*Everett* **v.** *Phillips,* 288 N. Y. 227, 233; *Ashwander* v. *Valley Authority,* 297 U. S. 288, 318.) Until the amendment of 1944 to section 61 of the General Corporation Law, as above set forth, such individual shareholder could institute a derivative stockholder's action although he had not held his stock, or any part of it, at the time of the wrongful transactions complained of.

In the leading case on this subject (*Pollitz* v. *Gould,* 202 N. Y. 11, 15) Hiscock, J., writing for a unanimous court, said " Assuming this question to be an open one in this court, we have no hesitation in approving the rule which has heretofore prevailed in this state, that in the absence of special circumstances this character of action may be maintained by a stockholder acquiring his stock subsequent to the transaction which is challenged, rather than the contrary one prevailing elsewhere. We do this not only because a long and uniform line of decisions by our own courts ought to have weight, but because the rule established by these decisions seems to be the sounder one."

The 1944 amendment to section 61 rejected the rule laid down in the *Pollitz* case (*supra*) and substituted, in place thereof, in its precise language, the rule which has long prevailed in the Federal courts and which is now subdivision (b) of rule 23 of the Federal Rules of Civil Procedure (U. S. Code, tit. 28, p. 2623).

Many evils had developed in connection with derivative stockholders' actions. In his memorandum approving the two amendments here being considered, the Governor stated: " In recent years a veritable racket of baseless lawsuits accompanied by many unethical practices, has grown up in this field. Worse yet, many suits that were well based have been brought, not in the interest of the corporation or of its stockholders, but in order to obtain money for particular individuals who had no interest in the corporation or in its stockholders. Secret settlements — really pay-offs for silence — have been the subjects of common suspicion."

Many of these suits were brought by stockholders who acquired their holdings long after the commission of the transactions complained of and just before the actions were commenced. Others were instituted by stockholders having such small holdings that their motives were open to question. Many directors

who were sued, had to incur large expense in defending themselves against charges ultimately determined to be unfounded.

Instead of having the entire problem dealt with in a comprehensive way, by an existing State agency such as the Law Revision Commission or the Judicial Council, or by a special committee created for the purpose, the Legislature saw fit to take it up piecemeal. Statutes of limitations were shortened; section 61-a, as we have seen, was enacted in 1941 to relieve innocent directors (although at the expense of the corporation). These remedies were only palliative in nature. The problem was not at all a simple one because until someone could find a better solution, " the minority stockholders' suit is at present the only civil remedy that stockholders have for breach of fiduciary duty on the part of those entrusted with the management and direction of their corporations." In 1944, after a report on the subject prepared under the auspices of the Chamber of Commerce of the State of New York had been brought to its attention, the Legislature passed section 61 as amended and section 61-b of the General Corporation Law.

The amendment to section 61 is clearly expressed; it brings our law into harmony with that which has long prevailed in the Federal courts, and it is definitely calculated to eliminate an existing abuse. The question that arises in connection with this statute is whether or not it is to have a retroactive application.

With respect to section 61-b, as the Governor's memorandum pointed out, there was a good deal of controversy. Many believed that the section tended to mechanize the law in a sphere where pliability in its exercise was essential; that in assessing the motives of the stockholders who sued by way of a derivative action, it placed the emphasis on the number and value of the shares held by them, rather than on the reasonable likelihood of establishing the charges of breach of fiduciary duty. Be that as it may, however, the Governor approved both bills, stating in his memorandum that they " represent a healthy experiment in cleansing our law courts of disreputable practices. The law will not be like the laws of the Medes and the Persians. It can be relaxed or altered as experience dictates in the future. But it is time for a start in the solution of the problem."

Having thus outlined the background of the legislation we are considering, we come to the following questions which are presented on this motion:

(1) Is section 61 of the General Corporation Law, as amended in 1944, retroactive in its application?

(2) Shall the requirement of section 61 of ownership by a plaintiff in a derivative stockholder's suit, of stock at the time of the transactions complained of, be read into section 61-b in order to determine whether the plaintiff has sufficient stockholdings to dispense with the furnishing of security as provided in the latter section?

(3) How shall section 61-b be construed; and assuming, as the Appellate Division of this department has held, that it is retroactive, what relief will be afforded plaintiffs in pending actions to enable them to bring themselves within the exception of section 61-b and dispense with the furnishing of security?

1. I hold that the 1944 amendment to section 61 has no retroactive application. No appellate court has yet passed upon this question, although several of my learned colleagues, for whose judgment I have great respect, have held contrary to the view here expressed.*

There are substantial distinctions between the amendment to section 61 as amended and section 61-b. The first section provides, using the language of the Governor's memorandum, " that a stockholder's suit may be brought only if the stockholder is an owner of stock at the time of the transaction concerning which he complains." As to the second statute, section 61-b, as the Governor's memorandum states: " It does not bar any action; it does not bar any right. It simply requires that the plaintiff represent a certain minimum of interest in the corporation or that he put up security for the costs and expenses which will be incurred if his case is determined to be unfounded. * * * Even if the stockholder owns only a tiny percentage or only $5.00 worth of stock, it still should be simple to bring an action without putting up security. If his action has any merit at all, it should be easy enough to interest others who do hold at least 5%, or stock valued at $50,000."

True, in a derivative stockholder's suit, the cause of action does not belong to the stockholder who brings it. It is brought in the right of the corporation; the cause of action belongs primarily to the corporation.

Let it be assumed, moreover, for the purposes of this motion, although the question is by no means free from doubt, that the amendment to section 61 affects the remedy, rather than the substance of the law; that it is procedural rather than substantive in character. I am nevertheless of the opinion that the amendment to section 61 is not to be applied to pending actions.

---

* See *Coane* v. *American Distilling Co.*, 182 Misc. 926, *Loew* v. *Interlake Iron Corp.*, 183 Misc. 303, and *Klum* v. *Clinton Trust Co.*, 183 Misc. 340.— [REP.

To hold section 61 to be retroactive would mean that pending actions might be wiped out. There is also the possibility that because of the bar of the Statute of Limitations, no other stockholder owning shares held by him at the time of the commission of the wrongful acts complained of, would be in a position to come forward and sue for redress for wrongs done to his corporation.

See how careful the Legislature was, when it intended section 61-a to be retroactive, specifically to write into the law that it was to apply to pending actions. If the Legislature had intended that the amendment to section 61 was to be retroactive, there is no reason why it should not have said so in plain, unequivocal language.

In *Matter of Berkovitz* v. *Arbib & Houlberg* (230 N. Y. 261, 270, 272) the court held that while the newly enacted arbitration statute was remedial in nature, it was nevertheless not to be made applicable to pending actions. "It is inapplicable," the court said, "unless in exceptional conditions, where the effect is to reach backward, and nullify by relation the things already done * * *. Years of costly litigation will thus be rendered futile. Nothing in the language of the statute gives support to the belief that consequences so harsh and drastic were intended by the legislature."

The court further observed (p. 271): "The word 'remedy' itself conceals at times an ambiguity, since changes of the form are often closely bound up with changes of the substance * * *. The problem does not permit us to ignore gradations of importance and other differences of degree. In the end, it is in considerations of good sense and justice that the solution must be found". (See, also, *Jacobus* v. *Colgate Co.*, 217 N. Y. 235.)

It is a well-recognized principle, moreover, that where two interpretations of a statute are possible, the court will endeavor to place that construction upon it which will not raise any serious question concerning its constitutionality. "Acts of Congress are to be construed if possible in such a way as to avoid grave doubts of this kind." (*Lewellyn* v. *Frick*, 268 U. S. 238, 251.) If this statute is to be interpreted as applying to actions that are pending, a grave question of constitutionality would be raised.

2. Apart from the question of retroactive application, the requirement of section 61, as amended, should not be read into the provisions of section 61-b.

In seeking to remedy some of the evils that have concededly arisen in connection with the institution and maintenance of derivative stockholders' suits, the Legislature passed two separate bills, each designed to accomplish a specific purpose. The amendment to section 61 is entitled: " An act to amend the general corporation law, in relation to the right to bring actions against officers or directors of corporations ". The act adding section 61-b is entitled: " An act to amend the general corporation law, in relation to security for costs and expenses in actions against officers or directors of corporations ".

Section 61, as amended, was designed to meet the evil occasioned by the bringing of actions by persons who purchased their shares long after the transactions complained of for the very purpose of bringing suit. Under that section, it would make no difference if the plaintiff owns shares of stock worth $1,000,000 in a corporation. Unless that stock, or some part of it, was held by him at the time of the transactions complained of (or thereafter devolved upon him by operation of law) he would have no right to institute a derivative stockholder's suit, whether he furnished security or otherwise. Section 61 as amended in 1944 barred such a stockholder from instituting a derivative action, and, on appropriate motion made by the defendant, he would be nonsuited.

Section 61-b, although of course dealing with the same subject matter and closely related to section 61, was designed to remedy the situation where, although a plaintiff was qualified to bring the suit — namely, he owned some stock as of the time of the commission of the wrongful acts charged in the complaint — his financial interest in the corporation was so small as to raise a presumption that he was motivated by interests of personal, selfish gain, rather than by concern for the welfare of the corporation and its stockholders generally. The Legislature fixed a figure of 5% of the outstanding stock or $50,000 of market value, which, in its judgment, would indicate that a plaintiff had a legitimate financial stake in the corporation to warrant the institution or maintenance of an action without furnishing security for reasonable expenses and costs if the litigation should turn out to be unfounded.

Section 61-b on this point is unambiguous on its face; its meaning is plain. It contains no reference to section 61. It simply deals with the amount of stockholdings, not with the time when the stock was acquired. There is no reason why the court should read something into a statute which is not there and which the Legislature easily could have included, if it had desired to do so.

The amendment to section 61 was, as has been said, taken verbatim from the rule of the Federal courts which had existed for many years. There never has been a requirement in the Federal courts that security be furnished by stockholders instituting derivative actions, irrespective of how small their holdings may be. The two problems are separate and distinct.

If the Legislature had intended that the condition determining the right of a plaintiff to bring an action under section 61 be read into the conditions determining the right of a defendant to obtain security under section 61-b — namely, that in both respects all the shares owned by the plaintiff shall have been owned at the time of the wrongs complained of — the Legislature could have spoken clearly to that effect.

"Legislation is often tentative, beginning with the most obvious case, and not going beyond it, or to the full length of the principles by which its act must be justified" (*Beard* v. *Boston,* 151 Mass. 96, 97).

I find nothing in the statute, or in the accompanying memorandum of the Governor, that supports the construction urged by the defendant on this motion. Indeed, the contrary appears to be true. In my judgment "it is wiser to stand by the law as the Legislature wrote it."

3. The interpretation of section 61-b and its applicability to pending cases.

If we consider section 61-b as it applies to derivative stockholders' suits commenced after its enactment, the pattern of the legislation is clearly outlined. Reading the section in the light of its entire background, I would interpret it to provide that the time of the commencement of the action determines whether or not security is required, irrespective of when the motion for security is made. The Legislature clearly did not intend to have the right to security fluctuate with the market, after the action was started. The amount of the security required might be increased or decreased, as the circumstances of the case require, but the right to security remains constant.

In order, therefore, to be relieved of the obligation to furnish security, the plaintiff or plaintiffs, when they commence the action, would be required to have, substantially, the minimum of stock specified in the statute. They could not bring an action with a few shares of stock, for example, and then, when a motion was made for security, seek to have other stockholders intervene so that the combined holdings would bring them within the exception of the statute. The action could be started if any part of the plaintiff's stock, regardless of the number

of shares, was held by him as of the time of the transactions complained of. But unless when the action was brought the plaintiff or plaintiffs held the amount of stock specified in section 61-b, the right of the corporate defendant to security for expenses became fixed. The time for a plaintiff to interest other stockholders, so that together they would have at least 5% of stock or stock valued at $50,000, is before the action is brought, and not thereafter. That means, of course, that after the action is instituted the plaintiff may not go out and buy additional stock to enable him to proceed without depositing security.

How shall section 61-b be applied to pending derivative stockholders' suits? I say, with great respect, that if I were free to decide the question on this motion, I should hold that implicit in the two statutes under consideration is the conception that they shall apply only to actions brought after their enactment. The Appellate Division of this department, by a divided court, has, however, held to the contrary. I am bound by that decision.

There is nothing in section 61-b which specifically says anything about pending actions or what shall be done in those cases. The matter came before Mr. Justice COLLINS in the *Shielcrawt* case. (*Shielcrawt* v. *Moffett,* 49 N. Y. S. 2d 64, 80, affd. 268 App. Div. 352.) He held that section 61-b was constitutional, and was retroactive in its application. He ruled, however, that " inasmuch as the suit was commenced prior to the enactment of sections 61-a and 61-b  *  *  *  it would be unjust to jettison the case summarily without affording the plaintiffs a reasonable opportunity to procure 5% of the shareholders or shareholders holding a market value of stock in excess of $50,000 to join in the action." Accordingly, he granted the motion for security unless on or before a date specified " the plaintiffs procured such joinder."

No appeal was taken by the moving defendant from this provision of the order of Mr. Justice COLLINS; it was not, therefore, passed upon one way or the other by the higher court. It illustrates the difficulties which present themselves when section 61-b is treated as retroactive in character.

I hold, therefore, that a court of equity may, in accordance with the residual discretion vested in it under section 61-b, grant a certain measure of relief in pending cases, because stockholders bringing them in good faith have been subjected by subsequent legislation to greater and unexpected burdens. Unless some such relief is granted, an entire cause of action may fall because of the bar of the Statute of Limitations.

The discretion should not, however, be exercised as broadly as the plaintiff in this case contends. True, under section 61-b there is nothing to prevent a plaintiff, before he brings the action, from going out and buying all the stock of the corporation that he wishes. Under that section he may not do so after the action has been started. It is entirely proper for the court, under the exceptional circumstances here presented, to give him a reasonable opportunity to have other shareholders join with him in the action (even if they did not own any stock as of the time of the commission of the wrongful acts complained of) in order that the combined holdings may be sufficient to enable them to proceed without furnishing security. If the action has merit, there should be no difficulty in accomplishing this. If it is without merit, it should not be continued. There is no reason, however, why a court of equity should exercise its discretion to the extent of giving recognition to the plaintiff's purchase of additional stock in the corporation, after the motion for security was made, because he believes such purchase involves a lesser risk than the outcome of the stockholder's suit he commended.

To summarize my conclusions, therefore, I hold:

(1) That the amendment to section 61 is not retroactive.

(2) Whether or not section 61 is retroactive, its requirement as to stock ownership should not be read into the provisions of section 61-b.

(3) I am bound to hold, under the decision of the Appellate Division in the *Shielcrawt* case (*supra*), that section 61-b has retroactive application.

(4) Assuming section 61-b to be retroactive, plaintiff in the pending action, in the exercise of the court's discretion, will be afforded an opportunity of having bona fide stockholders (for example, those owning stock before the enactment of section 61-b) join with him, so that their combined holdings may bring them within the exception of section 61-b. Such discretion, however, will not be exercised so as to count the plaintiff Picard's purchase of additional stock in the corporation, in order to enable him to dispense with security.

The motion is granted and plaintiff is required to furnish security in the sum of $25,000, on or before January 5, 1945, unless before that time he accomplishes the joinder as above set forth.

Settle order in accordance with the foregoing determination.