Norman Johnson, Suing on Behalf of Himself and All Other Stockholders of Gold and Stock Telegraph Company Similarly Situated, Plaintiff, v. Western Union Telegraph Company et al., Defendants.

Supreme Court, Special Term, New York County, March 5, 1945.

*Hays, St. John, Abramson & Schulman* for plaintiff.

*Simpson, Thacher & Bartlett* for Western Union Telegraph Company, defendant.

*Francis R. Stark* and *John H. Waters* for Gold and Stock Telegraph Company, defendant.

VALENTE, J. The majority opinion of the Court of Appeals on the appeal from the prior judgment in this action (293 N. Y. 379, 387, 388) specifically states that a retrial was ordered only because certain affirmative defenses such as the Statute of Limitations and ratification had not been passed upon by the courts below and " cannot be passed on by us now." In the preceding portion of the opinion the court had indicated its views as to the validity of the claims asserted by plaintiff. It had (1) upheld the latter's contention that under the 1881 lease Western Union was obligated to pay the income taxes assessed against Gold and Stock Telegraph Company and it had (2) overruled plaintiff's claim that he was entitled to a decree requiring Western Union to segregate the proceeds of a sale of securities which were included in the leased assets. Although the court did not expressly refer to plaintiff's demand that the 1938 loan agreement be set aside, it apparently considered that the loan agreement was necessarily invalid if, as is implicit in its decision, Western Union in fact attempted to · *loan* sums which the lease obligated it to *pay outright*. This was the position taken by counsel for the plaintiff-appellant whose main brief in the Court of Appeals contained the following statement (p. 7) : " If this question [i.e., the question whether Western Union was obligated to pay the income taxes] be decided in the affirmative, it would also follow that the agreement involving the loan of $528,000 made to Gold & Stock Company by Western Union in 1938 to be used in paying the 1920–1930 income taxes of the latter should be set aside." In these circumstances, Western Union's present attempt to sustain the validity of the loan agreement must be held abortive. That agreement, it should be noted, was wholly without consideration to Gold and Stock Telegraph Company. Indeed, not only did the latter receive no benefit whatsoever by virtue of the agreement, but, what is worse, it was saddled with the

onerous burden of obligating itself to pay 4% interest per annum for more than forty years on a so-called "loan" of money which it was legally entitled to receive from the "lender" as an outright and unqualified payment. Western Union's contention that at the time the loan agreement was entered into, in 1938, it possessed a good defense, by way of the Statute of Limitations, to any action for breach of its covenant to pay the 1920–1930 taxes apparently overlooks the fact that the 1881 lease, in which said covenant is expressed, is a sealed instrument. It follows that in 1938 the twenty-year Statute then applicable to actions upon sealed instruments had not yet run as to the taxes due for any of the years 1920 to 1930. Nor is there any need for plaintiff, as a condition of obtaining a decree setting aside the loan agreement, to restore to Western Union the sums advanced for the payment of the 1920–1930 taxes. This is so for the reason that there need be no return of sums which Gold and Stock is *in any event* entitled to recover from Western Union upon the latter's covenant to keep the leased property free from tax liens. At the time of the commencement of the present action on March 28, 1942, the twenty-year Statute applicable to sealed instruments had not run as to any of the years involved, viz., 1920–1930, except, at most, the years 1920 and 1921. Even as to those two years there is no evidence in the record to establish that the Statute of Limitations is a good defense, for the causes of action for breach of Western Union's covenant to keep the leased property free of tax liens did not accrue or arise until tax liens for the years in question were imposed upon the property. (The Court of Appeals, at page 384, held that it was the covenant to keep the property free from tax liens which imposed the obligation upon Western Union to pay the lessor's income taxes.) Income taxes do not become liens until the assessment list is received by the Collector and the taxpayer has failed to comply with a demand for payment (now U. S. Internal Revenue Code, §§ 3670, 3671; U. S. Code, tit. 26, §§ 3670, 3671). No proof has been offered that the taxes for 1920 and 1921, payable on March 15th of the years 1921 and 1922 respectively, had become liens prior to March 28, 1922, twenty years prior to the institution of the present suit.

It would seem appropriate, in this connection, to point out that even if the loan agreement were *not* set aside, the ultimate result would be practically the same as if the agreement had been invalidated. There is not a word in the loan agreement to indicate that Gold and Stock released Western Union from any claim or cause of action which the former might have against

the latter on the theory that Western Union was liable to Gold and Stock for the 1920–1930 income taxes. The mere fact that Gold and Stock borrowed from Western Union the sum necessary to discharge the taxes is not sufficient, in itself, to effect a surrender of Gold and Stock's right to sue Western Union for the amount which it was forced to borrow because of Western Union's refusal to pay taxes which it, rather than Gold and Stock, was obliged to liquidate. It follows that even if the loan agreement were permitted to stand, Gold and Stock would be entitled to recover in this action from Western Union the amount for which the 1920–1930 taxes were settled, together with appropriate interest. Western Union would not, as its attorneys seem to think, escape any obligation to pay the 1920–1930 taxes and at the same time retain the right to receive repayment of the " loan " in 1980 at the expiration of the lease. The recovery to which Gold and Stock is presently entitled, viz., the amount borrowed in order to pay the 1920–1930 taxes, would cancel or offset Western Union's right to the return of the same sum in repayment of the loan.

What has hitherto been written proceeds upon the assumption that the affirmative defenses of the Statute of Limitations, ratification and laches are without merit. Of this there can be little question. The lack of merit in the defense of the Statute of Limitations insofar as it relates to Gold and Stock's right to recover for the years 1920–1930 has already been referred to. The Statute is likewise no defense to the cause of action to set aside the loan agreement, for that agreement was entered into on December 21, 1938, less than four years prior to the commencement of this action. The only Statute of those pleaded which could possibly apply is the three-year Statute, but that is obviously not controlling as to an equitable cause of action to set aside an agreement. No ratification or approval by the stockholders of Western Union's failure to pay the 1920–1930 taxes has been established, nor has such ratification or approval of the loan agreement been satisfactorily proved, particularly in view of the fact that the letter of September 5, 1939, informing the stockholders of the loan agreement, contained a misstatement of an important fact, viz., a representation that Western Union " could not be held liable " under the terms of the lease for the lessor's income taxes.

The reference made to a misstatement of fact contained in the letter, dated September 5, 1939, sent to stockholders of Gold and Stock, should not be construed to impute any fraud or bad faith to the management of either Gold and Stock or Western

Union. The record is clear that the statement referred to represented a consensus of eminent legal opinion and that the considerable litigation with the Government on the income tax question had failed to cast any doubt thereon. The loan agreement in question was undoubtedly made in good faith and was advantageous to Gold and Stock on the basis assumed, i.e., that Western Union was not liable to pay those taxes. The opinion of the Court of Appeals demonstrates, however, that that basic assumption was erroneous.

The defense of laches has likewise not been successfully made out by the proof submitted. It may not be amiss, at this point, to refer to the fact that the failure of Gold and Stock to assert its rights for the period of a little more than three years elapsing between the date of the loan agreement and the commencement of this action has in no way injured or prejudiced Western Union.

The point now raised for the first time, that plaintiff may not sue because the transactions complained of antedated his acquisition of corporate stock of Gold and Stock, is based upon an amendment to section 61 of the General Corporation Law which was enacted after the prior trial of this action.* Assuming that the point may properly be made at this late date, this court is inclined to follow the decision of Mr. Justice SHIENTAG in *Noel Associates* v. *Merrill* (184 Misc. 646).†

Judgment is awarded to plaintiff setting aside and canceling the loan agreement. Settle judgment.

---

\* L. 1944, ch. 667, eff. April 9, 1944. — [REP.

† Holding the amendment not retroactive; see, also, *Burnham* v. *Brush,* 184 Misc. 815.— [REP.