Matthew M. Levy, J.
After trial, I rendered my decision in this consolidated stockholders’ derivative suit. In a number of major aspects, I dismissed the complaints and the causes of action of some of the plaintiffs on the merits. There remained certain enumerated counts with respect to which a reference to hear and report was ordered (30 Misc 2d 408 [Sup. Ct., N. Y. County, Special and Trial Term, Part VIII, Matthew M. Levy, J.]). However, the required proposed interlocutory judgment has not been noticed for settlement, and, therefore, the reference which was to be provided in that judgment has not as yet been formally directed. Now, the defendants Shahmoon and Shahmoon Industries, Inc., move before me to obtain relief as follows: (a) to direct the plaintiffs to post security for litigation expenses, pursuant to section 61-b of the General Corporation Law; (b) to require two named plaintiffs to file security for statutory costs on the ground that each is a nonresident of the State of New York, pursuant to section 1522 of the Civil Practice Act; (e) to dismiss the action of two other named plaintiffs on the ground that each has sold his stock in the subject corporation since the trial and is no longer a stockholder; and (d) to bar one named plaintiff from further prosecuting this action and to dismiss its complaint on the ground that it has acquiesced in and ratified the alleged wrongful acts of the defendants. I shall, for the sake of convenience and simplicity of disposition, not marshal my consideration of the several items of the defendants’ application in the precise order of their presentation.
The fourth branch of the motion seeks to bar a plaintiff, Peoples First National Bank & Trust Company, as trustee, from further prosecuting the action, and to dismiss its complaint on the ground that — both before and after the trial — it acquiesced in and ratified the acts of the defendants by giving them proxies to vote the defendant directors into office. The movants do not cite any precedent in support of their contention, and I cannot see any merit to it. In my view, the mere voting for the election of directors of a corporation or the granting of proxies for such purpose does not — without more — constitute ratification of or acquiescence in the acts claimed to have been done by the defendants, for which, in the circumstances disclosed in my prior opinion, this lawsuit has been directed to proceed to an accounting.
In the third branch of the motion, the defendants allege that the plaintiffs Blanche Imhof and Gilbert De Vore have, since the trial, sold their shares in the subject corporation, and, in consequence, their causes of action should be dismissed. There *432 is no denial by these named plaintiffs that they have divested themselves of their stockholdings. As a consequence, these plaintiffs have no present legal interest in the corporation and no present standing in this action.
I think it is appropriate to repeat here what I said in my opinion (30 Misc 2d 408, 426), rendered herein after the trial: “ I have heretofore had occasion to point out that, under the established law on the subject — whether the matter be examined from the standpoint of the plaintiff’s ‘ incapacity to sue ’ or of his ‘ having a cause of action ’ — ‘ it is necessary [in an action such as this] for the plaintiff to show, in order that she may recover, that she was a “ stockholder at the time of the transaction of which [s]he complains ” * * * and that she was a stockholder as well at the time of the commencement of the action * * * ’ (Harris v. Averick, 24 Misc 2d 1039, 1040). I add here that it is equally well established that the plaintiff must also be a stockholder at the time of the trial [citing cases].”
And I now add further — and I hold — that the plaintiff must also be a stockholder up to and including the time of the entry of the final judgment in the action. Accordingly, this facet of the defendants’ application is granted, and the causes of action of these plaintiffs are dismissed.
The second branch of the motion seeks to require the Peoples First National Bank & Trust Company, as trustee, and Hennesey & Co. (plaintiffs in two of the three actions) to give security for costs upon the ground that each is a nonresident of this State. It appears without denial that the first-named plaintiff is a resident of Pennsylvania and the second of New Jersey. And, no doubt, an application such as this may be made at any stage of the proceedings (see cases cited in Tripp, Cuide to Motion Practice [rev. ed.], p. 118, § 42) — at least, prior to judgment. Nevertheless, the defendants’ application to require these plaintiffs to furnish security for costs upon the ground of nonresidence is denied. For in this action as consolidated there are two or more plaintiffs, some of whom are concededly residents. The result is that the defendants cannot require security for costs to be given by the named plaintiffs as nonresidents, since the defendants are not, under the applicable statute, entitled to receive such security from all of the plaintiffs (Civ. Prac. Act, § 1522, subd. C).
But the defendants contend that there are three suits here, and, further, that — although in one of them the nonresident Trust Company is joined with coplaintiffs who are residents — in the action where the nonresident Hennesey is suing it is *433 the sole plaintiff. The answer to this contention is that the three actions here involved were duly consolidated by order dated May 4, 1959. A reading of that order makes it plain that the consolidation was clearly an organic one (Vidal v. Sheffield Farms Co., 208 Misc. 438) as distinguished from a mere direction that the causes while remaining separate be tried together (cf. Civ. Prac. Act, §§ 96, 96-a). The basic joinder in the instant suit is not affected by the facts that, under the order of consolidation, the pleadings in the three cases continued as the pleadings in the consolidated action, and that, in my decision after trial, I passed separately upon the sufficiency of the proof submitted in support of each cause of action alleged in each complaint.
We come now to the final branch of the motion, presented first in sequence by the defendants, wherein, in pursuance of section 61-b of the General Corporation Law, they seek to require the plaintiffs to furnish security for the movants’ expenses incurred in defense of the suit. That statute reads, in its relevant part, as follows: “ § 61-b. Security for expenses. In any action instituted or maintained in the right of any foreign or domestic corporation by the holder or holders of less than five per centum of the outstanding shares of any class of such corporation’s stock or voting trust certificates, unless the shares or voting trust certificates held by such holder or holders have a market value in excess of fifty thousand dollars, the corporation in whose right such action is brought shall be entitled at any stage of the proceedings before final judgment to require the plaintiff or plaintiffs to give security for the reasonable expenses, including attorney’s fees, which may be incurred by it in connection with such action e * *. The amount of such security may thereafter from time to time be increased or decreased in the discretion of the court having jurisdiction of such action upon showing that the security provided has or may become inadequate or is excessive.”
The present motion is brought not alone by the subject corporation, Shahmoon Industries, Inc., but also by the defendant Solomon E. Shahmoon. The applicable legislation entitles only “ the corporation in whose right such [stockholder’s derivative] action is brought ” to require the plaintiff to give the security. It is plain, from the clear language of the statute, that the individual defendant has no standing whatsoever to invoke section 61-b. The point is not raised by opposing counsel, but I shall, sua sponte, and without further ado, deny this branch of the application insofar as it is made by this defendant (cf. Matter of Buchman & Buchman v. Lanston Ind., 25 Misc 2d 818).
*434 We come now to the principal issue on this phase of the case. It will, of course, be readily observed that section 61-b does not expressly specify as of what critical date the number of shares or the market value of the stock owned by the plaintiffs is to be computed. Should it be the date of the commencement of the action? Or the date of the bringing on of the motion for the posting of security? What effect, if any, should be given to increases or decreases in the market value of the stock between these dates? What effect, if any, should be given to purchases or sales of shares by a plaintiff during the course of the action? Should the shares owned by a plaintiff be included in the computation of the number or the value of stockholdings if such ownership did not exist at the time when the defendants ’ wrongdoing is alleged to have occurred? What effect, if any, should be given to the dismissal of a plaintiff’s claim after trial, but before the entry of judgment? These are some of the questions that must now be resolved. Unfortunately, notwithstanding the argument of counsel to the contrary, the language of the statute is not altogether explicit, and not all of the questions are answered by a precise precedent whose holding would be decisive here.
The plaintiffs urge that the decision rendered on February 27, 1958, at Special Term, in the action of Perry v. Shahmoon Industries (11 Misc 2d 137) —wherein the court, on motion, finding that the stock then owned by the plaintiffs and intervenors in that action had a market value in excess of $50,000, denied the defendant’s application for security for the expenses of the litigation — is the law of the case and res judicata and is therefore binding on me.
Of course, since the order denying the motion was absolute (that is to say, the denial was not without prejudice or with leave to renew) the instant motion — if it were based upon the presentation of additional facts then existing or the present correction of defective proof then submitted — would not be entertained without prior leave of court (De Lacy v. Kelly, 147 App. Div. 37, 38). But where, as here, the motion is renewed on facts which occurred after the prior motion was made and passed upon, it may be presented as of right and considered de novo (Veeder v. Baker, 83 N. Y. 156, 162; Goldenberg v. Adler, 123 N. Y. S. 387, 389). The rule here reiterated does not depend upon the former denial being regarded as res judicata, “ but is a practice of long standing for the sake of orderly procedure to avoid renewal of contested motions for the same relief at the same stage of the litigation ” (Mutual Life Ins. Co. of N. Y. v. 160 East 72nd St. Corp., 272 App. Div. 48, 49).
*435 And, while the determination of my learned colleague is, indeed, the law of the case — which I would be bound to follow if such decision were made in the same case as between the same parties and on the same facts (Fried v. Lakeland Hide & Leather Co., 14 Misc 2d 305, 308-309; Sufrin v. Arbeau, Inc., 24 Misc 2d 909, 914, stay pending appeal denied 10 A D 2d 554; Aacon Contr. Co. v. Herrmann, 27 Misc 2d 197,199) —the views therein expressed have otherwise no binding authoritative force, albeit they may be, and indeed are, helpful as judicial precedent.
The statute provides that the subject corporation “ shall be entitled at any stage of the proceedings before final judgment to require ” the security here involved, and that the “ amount of such security may thereafter from time to time be increased or decreased in the discretion of the court having jurisdiction of such action ”. That does not, of course, mean that an application therefor may, as a matter of right, be repetitively made in the action or before one Judge and then another. But, in my view, a change of relevant fact or crucial circumstance may entitle the defendant — in this type of case as in any other — to make its motion anew. In Matter of Baker v. Macfadden Publications (300 N. Y. 325) the Court of Appeals held that an order made pursuant to section 61-b of the General Corporation Law is not immutable, even at nisi prius. The court said, at pages 329-330: “ The New York Supreme Court, so long as an action is pending before it, has power, for sufficient cause, to modify or vacate an order made in the course of the action [citing authorities]. Section 61-b was not intended to declare an exception to that general rule.”
Clearly, the decision at Special Term is neither “ the law of the case ’ ’ nor ‘ ‘ res judicata ’ ’ and clearly, too, there is sufficient cause for a change in the order heretofore made. Firstly, at the time of that decision, the plaintiffs in the Perry action owned 5,740 shares of stock in the defendant corporation; whereas, at the present time, the claimed stockholdings of the plaintiffs in the Perry action aggregate but some 1,615 shares. Secondly, after trial, when all the facts were unfolded, the Perry and the Hennesey charges were found to be meritless in substantial measure, and the Sorin complaint was dismissed on the merits in its entirety. Other factors, too, disclosed in the papers —-but not so striking as to require mention here — have changed in the last three years.
I, therefore, reject this contention of the plaintiffs. The precepts upon which they rely are designed to prevent mere litigiousness and the renewal of motions which had already been fully heard and decided (Belmont v. Erie Ry. Co., 52 Barb. 637, *436 642), not to preclude consideration on the merits of an application basically founded upon new conditions and changed circumstances.
This application was initially made returnable at Special Term Part I, the Motion Part of this court, and was, upon request of counsel, referred to me as the Trial Justice. The question on this issue therefore arises (although not posed by counsel) whether this branch of the defendants’ prayer for relief must or should have been retained at Special Term Part I by the Justice there presiding or referred by him (or by me) to the Justice who passed upon the earlier motion. I have determined that, as the trier of the cause, it is appropriate in the present situation for me to entertain the present application, rather than reject the reference to me or direct a reference of the motion to either of my learned colleagues (cf. Frindel v. 123 Cedar St. Corp., 154 N. Y. S. 2d 255, 259; Tharaud v. James Bros. Realty Co., 28 Misc 2d 921). I shall therefore proceed to a consideration of this application on the merits.
Some question has arisen in the case at bar as to the present status as a plaintiff of the estate of Seymour Eosen, deceased. By the order of consolidation dated May 4, 1959, and pursuant to order to show cause dated March 13,1959, A. Edward Masters and Sam Eosen, as executors of the last will and testament of Seymour Eosen, deceased, were granted leave to intervene as additional parties plaintiff in the Hennesey action; and in the order it was provided that the estate be named as party plaintiff in the consolidated title of the three actions joined thereby. The attorney for the defendant corporation states in his. present moving affidavit that, “ the corporate records indicate that he [Seymour Eosen] sold [some of] his stock since then [the trial] and that only 600 shares are presently registered in his name.” In support of the opposition to the instant motion, an attorney appearing for one Euth Eosen — not a plaintiff, and not served with the motion papers — submitted an affidavit to the effect that his client is the widow of Seymour Eosen who 1 ‘ originally appeared in this action on December 16, 1957, in opposition to a proposed settlement herein” (see 7 A D 2d 895). The affiant further states ‘ ‘ on information and belief ’ ’ that, at the time of such appearance, Seymour Eosen “ was the beneficial owner of 11,000 shares of stock of Shahmoon Industries, Inc., which had been acquired by "him between January 16 and March 1, 1956 ’ ’. It is further asserted by this attorney, also 1‘ on information and belief ”, that Seymour Eosen sold some of the shares during his lifetime, that his executors sold some during the administra *437 tion of the estate, that the balance of the shares were transferred to Euth Rosen, as sole distributee under the will, that she has since sold some of the shares, “leaving her with 4,100 shares registered in her name as of this date [June 27, 1961] The attorney makes the request, in closing his affidavit, that Ruth Rosen ‘1 be permitted to be substituted for the aforesaid executors in the consolidated action herein ’ \
Objection is made by the defendants to this procedure and application. There is dispute as to the number of shares involved. The widow’s attorney does not give the sources of his information or the grounds of his belief as to any of the transactions referred to. No affidavit is submitted by either of the executors. No affidavit is submitted by the applicant for substitution. Nor has any direct motion for such substitution been made. The defendant’s objection is sustained (see Bauer v. Servel, Inc., 168 F. Supp. 478, 482; Walsh v. Ben Riley’s Arrowhead Inn, 2 A D 2d 714; Helfand v. Massachusetts Bonding & Ins. Co., 197 App. Div. 759, 762).
We come now to another issue. There is no claim made by the plaintiffs that, at any time, they owned in the aggregate at least 5% of the corporation’s outstanding shares. A dispute does arise as to whether the plaintiffs satisfy the other exculpatory provision of section 61-b, by which they may avoid the requirement of furnishing security — that is, the ownership of more than $50,000 worth of such shares. I shall now direct my attention to this problem, which, as I have said, may be divided into several phases.
First, at what date is the market value to be ascertained? The defendants rely most strongly upon Richman v. Felmus (8 A D 2d 985), a decision in the Second Department, in support of the proposition that it is the present market value which should control. (The present market value is $9.50 per share. The market value at the time of the making of this application was $10 per share.) However, in consonance with certain holdings elsewhere made, it is my view that — in respect of market value — as to the plaintiffs originally suing, the time of the commencement of the action, and, as to any plaintiffs who may later be joined, the time of their intervention, determines whether or not security is required, rather than the time when the motion for security is presented.
In Matter of Baker v. Macfadden Publications (270 App. Div. 440, 443) the court said: “ The time for determining the right of the corporation to security is when the action is instituted or when the motion for security is made ” (italics supplied). It is not without significance that the Court of Appeals, in *438 reversing upon another issue, disagreed expressly with the reason thus given by the Appellate Division for its decision in that case (300 N. Y. 325, 329, supra). "While section 61-b “ authorizes the Court from time to time to increase or decrease, in its discretion, the amount of such security there is no provision authorizing the Court to require a plaintiff whose holdings had a market value at the date of the commencement of the suit of at least $50,000, to give security in the event that during the pendency of the litigation the market value of his holding depreciates below that sum ” (Dalva v. Bailey, 158 F. Supp. 204, 206). “ The Legislature clearly did not intend to have the right to security fluctuate with the market, after the action was started ’ ’ (Noel Associates v. Merrill, 184 Misc. 646, 656).
With respect to plaintiffs who were added after the institution of suit, the late Mr. Justice Shientag also said, in the Noel case, just cited, that the ‘ ‘ time for a plaintiff to interest other stockholders, so that together they would have at least 5% of stock or stock valued at $50,000, is before the action is brought, and not thereafter ” (Noel Associates v. Merrill, 184 Misc. 646, 657, supra). The decision was made shortly after the enactment of the statute. But, since then, the law has been established to the contrary. It is now not necessary, in order to avoid posting security, that the initial plaintiffs own stock of the required amount or value at the time of the commencement of the action; it suffices if plaintiffs having sufficient holdings be thereafter duly joined — even following a motion by the defendants for security (Matter of Baker v. Macfadden Pubs., 300 N. Y. 325, 329, supra; Weinstock v. Kallet, 11 F. R. D. 270, 273; Perry v. Shahmoon Ind., 11 Misc 2d 137, supra). The evaluation of the holdings of these plaintiffs is not to be related back to the date of the commencement of the action (Weinstein v. Behn, 68 N. Y. S. 2d 199, 202, affd. 272 App. Div. 1045, motion for leave to appeal denied 273 App. Div. 877, appeal dismissed 298 N. Y. 506). Nor should the assessment be as of a date later than the return day of the motion presented by the additional stockholders for leave to intervene (Dalva v. Bailey, 158 F. Supp. 204, 207, supra).
It cannot “with reason be contended that his [the stockholder’s] concern with the corporate welfare is lessened because his stock holdings after that date [commencement of suit or application for intervention, as the case may be] decline in market value by reason of either general market conditions or even through the very wrongs which he seeks redressed by the suit. * * * There is no indication that the legislature intended that the right to security should depend upon the *439 vagaries of the stock market ” (Dalva v. Bailey, 158 F. Supp. 204, 206-207, supra).
The next issue that arises is whether, for the purpose of determining the question of avoidance of the security requirements of section 61-b, it is necessary for the plaintiffs — concededly the owners of a sufficient number of shares of adequate value when the action was commenced or when they intervened — to be stockholders with such interest at the precise time of the commission of each of the specific acts complained of. This question — a difficult one — was left open in Bauer v. Servel, Inc. (168 F. Supp. 478, 481-482, supra). Once again, I am constrained to express my disagreement with the Second Department case upon which the defendants base their argument (Richman v. Felmus, 8 A D 2d 985, supra).
While it is clear that, under the basic statute (§ 61), one suing in an action such as this is required to be a stockholder at the time of the wrong complained of, it is equally clear that, under the security statute (§ 61-b), it is not necessary for him — alone or in association with others — to own the required shares, in number or value, with respect to each of the wrongful acts alleged or each of the causes of action pleaded (Perry v. Shahmoon Ind., 11 Misc 2d 137, supra). “If the Legislature had intended that the condition determining the right of a plaintiff to bring an action under section 61 be read into the conditions determining the right of a defendant to obtain security under section 61-b — namely, that in both respects all the shares owned by the plaintiff shall have been owned at the times of the wrongs complained of — the Legislature could have spoken clearly to that effect. * * * [The] requirement [of § 61] as to stock ownership should not be read into the provisions of section 61-b” (Noel Associates v. Merrill, 184 Misc. 646, 656-658, supra). This reasoning thus expressed in Noel was incorporated in the Perry opinion (supra).
Taking up another issue, the defendants argue that, in view of the dismissal of the Sor in complaint in its entirety on the merits after trial, I should not now include any of the stock allegedly owned by these plaintiffs in determining whether or not shares of sufficient market value are owned by all of the plaintiffs to satisfy the requirements of section 61-b. With this contention I agree. While, as pointed out by the plaintiffs, judgment has not as yet been entered in this action, a decision has been rendered after trial. The rendition of the decision was in effect the judicial pronouncement of the determination of the rights of the parties. The entry of the judgment will, in *440 substance, be the ministerial act of signing and filing a statement of such judicial pronouncement (Civ. Prac. Act, § 79-a; cf. Metropolitan Life Ins. Co. v. Union Trust Co. of Rochester, 294 N. Y. 254, 259; see Matter of New York State Labor Relations Bd. v. America Marble Co., 13 Misc 2d 877, 880-881, affd. 7 A D 2d 907). I hold that, for the purposes of this motion, the dismissal on the merits of the Sorin complaint, as pronounced in the decision, eliminates the shareholdings of the Sorin plaintiffs from the computation.
It will be seen from all of the foregoing that, in construing section 61-b in respect of the critical dates as to stock ownership and evaluation, the pattern I have evolved may be summarized as follows:
1. The time of the institution of the suit by a plaintiff fixes the date when the unit market value of the stock ownership of that plaintiff is to be ascertained.
2. The time of the application of a stockholder to intervene in the action fixes the date when the unit market value of his shares is to be ascertained.
3. The stockholder must be a plaintiff at the time of the application for security.
4. The plaintiff must be a stockholder at the time of the application for security.
5. The time of the application for security is the date when the number of shares owned by the stockholder — whether an original suitor or an intervener — is to be counted.
In my view, the application of these conclusions in relation to the enforcement of the security requirements of the statute adequately protect, on the one hand, the stockholders who in good faith sue the officers and directors who have allegedly committed breaches of their fiduciary duty, and, on the other hand, adequately protect the company and its executives and management from unfounded suits (or the continuance thereof) by stockholders having or maintaining such small holdings that their good faith may be challenged (see Memorandum of Approval of General Corporation Law, § 61-b, Public Papers of Governor Thomas E. Dewey [1944], pp. 255-256).
With these precepts in mind, I am now able to append a final table setting forth the names of the appropriate stockholders and the number of shares each owned when the present motion for security was made, with the applicable market value on the respective pertinent dates as disclosed by the papers before me or by the filed papers herein or by way of judicial notice taken of public statistical data of trading on the securities exchange:
*441 Name of Stockholder Critical Date
Then Market Value Per Share
Number of Shares Now Owned
Total Market Value as of Critical Date
Dorothy Hennesey, doing business as December
Hennesey & Co. 11, 1957 $9.125 40 $365.00
Charles Perry October
18, 1957 11.25 140 1,575.00
Peoples First National Bank & Trust February
Company 3, 1958 12.625 700 8,837.50
Edward J. Schoenbrod February
3, 1958 12.625 75 946.88
Herbert Fielman February
3, 1958 12.625 200 2,525.00
Germaine Pinon February
3, 1958 12.625 300 3,787.50
Dorothy Justin February
3, 1958 12.625 200 2,525.00
Elsie L. Shapiro, A. Edward Masters and March
Sam Rosen, as Executors of the Last 12, 1959 14.75 600 8,850.00 Will and Testament of Seymour Rosen, Deceased
The aggregate market value is $29,411.88. This, of course, is substantially less than the $50,000 of the market value of the stock of Shahmoon Industries, Inc. And, since, as I have earlier mentioned, it is undisputed that the plaintiffs own less than 5% of the outstanding shares of the stock of the corporation, that branch of the motion which seeks the posting of security for expenses in pursuance of section 61-b is granted.
The defendants also urged that the stock owned by the Peoples First National Bank & Trust Company should not be included in the computation because the Trust Company had £ £ received a £ guarantee ’ from plaintiffs ’ general counsel that the action was ‘ sure ’ and that there would be no costs imposed against it. They were not advised of the real danger of being required to reimburse the corporation for expenses ’ ’. While the inclusion of the Trust Company holdings did not, as has been seen, suffice to reach the $50,000 minimum requirement, I shall nevertheless record my view as to the validity of the defendants’ argument — as against the possibility that a review of my other rulings herein may make the 700 shares here involved crucial in the total enumeration.
*442 I hold the defendants’ contention to be unsound. Whatever redress the Trust Company may have in the event that the representations allegedly made to induce it to intervene were false, or in the event that the assurances allegedly given should be enforced, that remedy is personal to the Trust Company. The assertions by the defendants in that regard are not a basis for excluding the Trust Company’s holdings when the defendants invoke section 61-b and the Trust Company itself, as an intervening plaintiff, makes no point of the defendants’ objections.
The substance of the same argument was made in Neuwirth v. Wyman (119 N. Y. S. 2d 266), on a motion by plaintiffs to vacate an order for security under section 61-b. The court there said, at page 267: “ The application is opposed on the ground that the consents of the additional stockholders to join the plaintiff in the action were obtained through false and misleading statements.” And on page 268: “The assurances to the stockholders attacked by the defendants were * * * that the plaintiff herself agreed to pay any costs which might be awarded, and that those joining would have no responsibility for attorneys’ fees or expenses.” The court held (p. 268) that these facts “ do not bar the right of the additional stockholders to join as plaintiffs in the action or require the denial of the application to vacate the order for security.”
Settle order accordingly. Written suggestions with respect to the amount of security may be served and submitted, together with the proposed order.