**OTIS ELEVATOR CO. v. STANDARD CONSTRUCTION CO., Inc., et al.**

**No. 3066 Civil.**

United States District Court
D. Minnesota, Fourth Division.

Jan. 3, 1950.

Olaf R. Kelly and Kelly, Berglund and Johnson, all of Minneapolis, Minn., for Swedish Hospital.

E. P. Chapman and Stinchfield, Mackall, Crounse & Moore, all of Minneapolis, Minn., for plaintiff.

NORDBYE, Chief Judge.

On or about January 26, 1946, the Swedish Hospital of Minneapolis, hereinafter sometimes called "Swedish", and the Standard Construction Company, hereinafter sometimes called "Standard", entered into a contract upon a cost plus a fee basis for the construction of certain new floors at the hospital and for certain alterations in the existing hospital structure. The total cost was estimated in the contract at $640,-000 plus the fee to Standard of five per cent of the final construction figure. On February 16, 1946, Otis Elevator Company, hereinafter sometimes called "Otis", and Standard Construction Company entered into a contract for installation of two elevators and three dumb waiters in the hospital. The amount of that contract was $76,842. The work both of Standard and Otis eventually was claimed to be completed, and Standard paid Otis approximately $59,215.51 of the elevator contract price. According to Otis, approximately $17,526.49 remains unpaid. This action is brought by Otis to recover that amount.

Standard's answer alleges, among other things, that it acted as the agent of Swedish Hospital when it executed the elevator contract. Swedish Hospital has moved to intervene upon the premise that Standard acted as its agent when Standard executed the elevator contract and therefore that Swedish has an interest which entitles Swedish to intervene as a matter of right pursuant to Rule 24(a). Swedish contends that Standard's representation of Swedish's interest is or may be inadequate, that Swedish may be bound by a judgment in favor of Otis against Standard, and that Sweddish's interest and the action between Otis and Standard have common questions of law and fact involved. The intervention, Swedish argues, will not delay or prejudice the adjudication of the rights of Otis and Standard. Swedish also seeks to assert a counterclaim against Otis for approximately $250,000 damages.

Otis objects to the intervention principally upon the theory that as a matter of law no agency relationship existed between Standard and Swedish in view of their contract for construction of the additional floors and alterations, and that the Court must deny Swedish's petition to intervene under Rule 24(b) in an action between an independent contractor (Standard) and Otis. Swedish contends that the question of agency cannot be determined on motion to intervene. The contracts between Swedish and Standard and Standard and Otis, together with other written exhibits, are annexed to the pleadings and are a part of the record of this case.

The contract between Swedish and Standard provides that Standard will do the construction work *in accordance with the plans and specifications of the architects* at an estimated cost of $640,000 plus $6,000 for boilers and generator equipment. A five per cent fee based upon the construction cost was to be paid to Standard. Sub-contracts exceeding $500 were to be submitted to the building committee before letting. Standard was to receive, audit, and approve all invoices and to pay them from a special bank account into which Swedish was required to deposit funds weekly in accordance with the rate of completed construction. The authorized signature of an officer of Swedish Hospital was required, however, on the checks. Payrolls were to be handled by Standard and paid from funds deposited by Swed-

ish. Standard's compensation insurance policy and public liability and property damage insurance policy was to be operative for the job. Swedish was to be furnished with receipted invoices, etc., and they were subject to verification by Swedish. Materials, tools, and supplies which Standard furnished from its yard were to be figured at cost to Standard. A method for disposing of excess materials at termination of the work also was enunciated. A field office was to be maintained as a part of the construction cost.

The contract between Swedish and Standard does not mention elevators specifically. And the architects' specifications to which the contract refers likewise omit elevators. In fact, they specifically declare that they do not cover elevator and certain other factors in building. Swedish contends, therefore, that the elevator matter was not intended to be included in the written contract with Standard and that the arrangement between Swedish and Standard regarding the elevators was one in parole which created an agency in Standard to contract with Otis on behalf of Swedish for the elevators and dumb waiters. Swedish contends that all the facts and attendant circumstances concerning the written contract and the arrangements for the elevators and the performance of the contract and the elevator arrangement must be considered in determining the existence of an agency between Swedish and Standard for the elevator transaction. Otis, on the other hand, contends that the written contract establishes that as a matter of law the relationship between Standard and Swedish was that of independent contractor and owner during the entire job and with respect to the entire job, including the elevators, and that that contract is exclusive and controlling.

■ The Minnesota law is clear that "The contracts themselves do not necessarily govern the question, and the relation of respondeat superior may depend entirely upon the conduct of the parties." Anderson v. Foley Bros., 110 Minn. 151, 153, 124 N.W. 987, 988. See also Gill v. Northwest Airlines, 228 Minn. 164, 36

N.W.2d 785; Alansky v. Northwest Airlines, 224 Minn. 138, 28 N.W.2d 181, and cases cited therein. Consequently, it seems clear that the contracts between Standard and Swedish are not conclusive. The conduct of those parties and also of Otis may be considered in determining the existence of an agency relationship with respect to the elevator contract between Standard and Otis. The inquiry is not confined necessarily to the written contracts between Swedish and Standard, and Standard and Otis. All the facts and circumstances, including the conduct of the parties, may be recognized and considered.

■ As Swedish points out, the contract between itself and Standard declares that the work shall be done in accordance with the specifications contained in the architects' plans for the building. Those plans and specifications specifically omit elevators. Consequently, the contract between Swedish and Standard, even if it seems to create an independent contractor situation with respect to what it covers, is at least sufficiently uncertain that the Court should not hold, on this showing, that the situation will not permit explanation to show what the intent of the parties to the contract actually was. Otis does cite several letters and also some cases in support of its contention that the reference to the specifications should cut no figure. But the effect to be given the letters really goes to the merits of the agency question. And although citations are helpful in many instances, the question here is what was the intention of the parties. To insert into their contract by general rules the terms which they may not have contemplated, violates the rule that every legal contract must be interpreted and enforced according to the intent of the parties in so far as that intent can be determined legally.

■ The question on a petition to intervene is whether a well-pleaded defense or claim is asserted. Its merits are not to be determined. The defense or claim is assumed to be true on motion to intervene, at least in the absence of sham, frivolity, and other similar objections. The contract relationship between Swedish and Stand-

ard is not such that it is necessarily in diametric opposition to the claim of agency, as Otis contends. The cases Otis cites in support of its claim of an independent contractor situation even with respect to the elevators were decisions decided on the merits of those cases. They are in point here only with respect to the facts they indicate are important to determine the existence of an agency or independent contractor relationship. They do not aid here in determining what the facts are, and consequently they do not aid in determining if an agency existed in light of matters not contained in the written contract.

■■ Swedish, in its proposed answer in intervention, pleads agency. Although Otis points out that the allegation merely states that the relationship between Swedish and Standard is one of "agency", without reference to the acts upon which it is based, that objection does not appear fatal. Northwestern Detective Agency, Inc., v. Winona Hotel Co., 1920, 147 Minn. 203, at page 205, 179 N.W. 1001, sustains such an allegation of agency. See also Eisenberg v. Matthews, 1901, 84 Minn. 76, at page 78, 86 N.W. 870. Moreover, such an allegation seems sufficient to claim an interest which requires protection and justifies intervention. Although a valid cause of action or defense must be pleaded, Atlantic Refining Co. v. Port Lobos Petroleum Corp., D.C., 280 F. 934; Continental & Commercial Trust & Savings Bank v. Allis-Chalmers Co., D.C., 200 F. 600, the Court should be as liberal in determining that question of intervention as on dismissal motions. For the ruling in both situations determines if the claim or defense can be litigated and justice sought. The Court of Appeals for this Circuit has held in Dennis v. Village of Tonka Bay, 1945, 151 F.2d 411, 412, that "there is no justification for dismissing a complaint for insufficiency of statement unless it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of the claim." In view of the Minnesota Supreme Court's ruling in Northwestern Detective Agency, Inc., v. Winona Hotel Co., supra, and the liberal intent of the Federal rules, Swedish's allegation of "agency" appears sufficient upon this motion to intervene.

■ Otis recognizes that Swedish may intervene if Standard was its agent. The correctness of this conclusion is apparent from Rule 24(a) of the Civil Rules, which grants the right to intervene to anyone who may be bound by the judgment rendered in the action and when the representation of their interest by the existing parties may be inadequate. Swedish's counterclaim arises out of the same transactions and occurrences as those upon which Otis bases its cause of action. That one who may intervene as a matter of right should be accorded the right to assert a counterclaim related to the transactions upon which the action is based is within the logic and intent of the Rules 24 and 13, which concern intervention and counterclaims, seems apparent. 2 Moore's Federal Practice, §§ 24.12, 24.13. Otis' contention that, in view of the written contract beween Standard and Swedish, evidence of the orally created agency is inadmissible, despite apparent agreement between Standard and Swedish as to the existence of the agency, is not persuasive.

■ Upon all these premises, therefore, Swedish's motion for the right to intervene and assert its defense and counterclaim against Otis should be, and is, granted. It is so ordered. It is further ordered that the proposed answer and counterclaim of Swedish may stand as its answer and counterclaim herein and that Otis is accorded twenty days after the filing of this order within which to interpose its reply to said counterclaim. An exception is reserved to Otis.