Maurice DALVA and Nathan Hausman, in Their Own Behalf as Stockholders of Defendant Pantepec Oil Company, A.C., and in Behalf of All Other Such Stockholders Similarly Situated, Plaintiffs,

v.

John S. BAILEY, John W. Buckley, Eduardo Lopez de Ceballos, Jose Melich Orsini, Santiage Segovia, John T. Sinclair, Jr., Guy K. Stewart, R. Ramirez U, Cecilio Velasco, G. J. van Wageningen, Phillips Petroleum Company and Pantepec Oil Company, C. A., Defendants.

United States District Court
S. D. New York.
Dec. 19, 1957.

Block & Block, Sonnenschein & Sherman, Murray W. Greif, New York City, for plaintiff.

Coudert Brothers, New York City, for defendants Pantepec Oil Co., C. A., and Buckley.

Sullivan & Cromwell, New York City, for defendant Phillips Petroleum Co.

BICKS, District Judge.

Maurice Dalva and Nathan Hausman, stockholders of Pantepec Oil Company, instituted a derivative action in this Court on April 18, 1957. Upon Pantepec's motion for security for expenses pursuant to New York General Corporation Law, McKinney's Consol.Laws, c. 23, § 61–b, an order was made directing plaintiffs to file a bond in the amount of $50,000, "provided, however, that if, within sixty (60) days * * * joinder of additional stockholders * * * is effected so that this action will be maintained by holders of at least 5% of the outstanding shares * * * or by the holders of stock * * * having a market value in excess of $50,000, then in such event, the plaintiffs may move to vacate this order." The instant motion, uncontrovertedly timely made, seeks, inter alia, joinder as parties plaintiff of Joseph Applebaum and the Applebaum Foundation, Inc., record and beneficial holders of shares having an aggregate market value in excess of $50,000 as of the date of the making of this motion, and vacatur of the order requiring filing of a bond for expenses.

The motion is resisted on three grounds, viz.: (1) that the aggregate market value of the holdings of the plaintiff and the proposed intervenors subsequent to the bringing on of this motion declined, and presently is, below $50,000; (2) that since Pantepec is a creature of Venezuela, the law of that country controls and under that law the plaintiff as well as the proposed intervenors are deemed to have ratified the alleged wrongful conduct complained of, and (3) that the moving papers were not accompanied by an amended complaint.

The first ground of objection poses the problem as to which date is to be used for the purpose of § 61–b of the General Corporation Law of New York in determining market value of the proposed intervenor's shares. Is it the date of commencement of the suit, the date of the bringing on of the motion to intervene or the date of the entry of an order upon said motion? In my view the valuation date should be not later than the return day of the motion.

Neither the statute nor decisional law treat with the precise issue.[1] The words

1. The only case to which we have been cited which at all deals with the problem is Weinstein v. Behn, Sup., 68 N.Y.S.2d 199, 202, affirmed 1947, 272 App.Div. 1045, 75 N.Y.S.2d 284, leave to appeal denied 1948, 298 N.Y. 506, 80 N.Y.S.2d 656. There, attempt was made to evaluate the proposed intervenor's holdings as of the date of the institution of the suit. Such a relating back was disallowed.

"market value" appear in section 61–b in the following context: "In any action instituted or maintained in the right of any * * * corporation by the * * * holders of less than five per centum of the outstanding shares * * * of such corporation's stock * * * unless the shares * * * held by such * * * holders have a market value in excess of fifty thousand dollars, the corporation * * * shall be entitled at any stage of the proceedings * * * to require the * * * plaintiffs to give security for the rea- sonable expenses * * *." While that section authorizes the Court from time to time to increase or decrease, in its dis- cretion, the amount of such security [2] there is no provision authorizing the Court to require a plaintiff whose hold- ings had a market value at the date of the commencement of the suit of at least $50,000, to give security in the event that during the pendency of the litigation the market value of his holdings depreciates below that sum. No reason appears why under the guise of construction such a provision should be read into the statute with respect to a proposed intervenor whose holdings intermediate the making of the motion and the entry of an order thereon decline below the statutory amount.

The omission to insert such a provision cannot be ascribed to oversight but is consistent with the legislative intent insofar as it can be ascertained from the scant material available.[3] The purpose is not to condone corporate wrongdoing nor to bar the stockholder's right to obtain redress therefor on be- half of the corporation. Neither is it intended to impede nor put any road blocks in the path of well based suits brought in the interest of the corpora- tion. Rather, it is an effort to deter so- called "strike" stockholder suits brought by individuals who have no genuine in- terest in the corporation or in its stock- holders, but only seek to gain private advantage.[4] Underlying the statute is the belief that a stockholder with a suffi- cient interest in the corporation will not lend himself to efforts to deplete the corporate treasury, an almost inevitable result when the corporation succeeds in its defense of a groundless suit.[5] The statutory test of that interest is put in terms of amount or value of stock held. A plaintiff who holds less than the amount so fixed is required to demon- strate his interest in the corporation by posting security.

Given a stockholder who, on the date upon which he seeks to intervene, meets that standard of sufficiency of interest, can it with reason be contended that his concern with the corporate welfare is lessened because his stock holdings after that date decline in market value by rea- son of either general market conditions or even through the very wrongs which he seeks redressed by the suit. Indeed a decrease in market value might well heighten the interest of the stockholder in the hope that a favorable determina- tion of the suit would result in at least erasing the decline.

The Court reasoned that the proposed in- tervenor "did not become a plaintiff whose stockholdings are entitled to be in- cluded in determining whether the plain- tiffs owned sufficient stock to defeat a motion for security for costs until, at the very earliest, he applied for leave to intervene as a plaintiff."

2. Section 61–b provides in part as follows: "* * * The amount of such security may thereafter from time to time be increased or decreased in the discretion of the court having jurisdiction of such action upon showing that the security provided has or may become inadequate or is excessive."

3. The bill adding section 61–b to the Gen- eral Corporation Law of the State of New York was enacted into law without a public hearing, either before the legis- lature or the Governor.

4. See Public Papers on Governor Dewey (1944) page 255.

5. In addition to the expenses of its own counsel the corporation may also be lia- ble to directors, officers or employees for their reasonable expenses, including attorney's fees, incurred in connection with the defense of such action. See N. Y. General Corporation Law, §§ 64–68.

There is no indication that the legislature intended that the right to security should depend upon the vagaries of the stock market. To defeat the requirement for security in this type of litigation plaintiffs are required to hold at least the stated interest in the corporation; Hausman and Applebaum demonstrated such interest when they moved to intervene owning stock with a market value of over $50,000. If we say that the required interest does not exist today what must we do when the value of the shares once again rises. The defendant's suggestion that the determinative date is the one upon which the ruling on the motion is made, leaves too much to chance. The outcome of a lawsuit should not be made to depend upon the fortuitous signing of an order on one day or another. Employing the return date of the motion as the controlling one fixes the valuation date with certainty. Such construction of the statute fully gives effect to the legislative objective and at the same time does not deny a day in court to a plaintiff who at the institution of the suit met the statutory standard and whose holdings thereafter declined below the stipulated value by reason of circumstances over which he had no control.

The second ground upon which defendants rest their opposition is that under the law of Venezuela, which it is contended controls here, petitioners are deemed to have ratified the transaction of which they complain and are, therefore, estopped from bringing suit. This objection is not well taken. The issue of ratification may involve the construction and application of foreign law. The law of Venezuela is to be proved at the trial, as another fact, and not upon an intervention application which involves the discretionary powers of the court. Markovic v. National City Bank of New York, D.C.S.D.N.Y.1952, 12 F.R.D. 175.

Decision on a motion to intervene turns on the sufficiency of the claim asserted in the complaint and an issue which is in the nature of a defense may not be considered. Otis Elevator v. Standard Construction Co., Inc., D.C.D. Minn.1950, 10 F.R.D. 404, 406; Clark v. Sandusky, 7 Cir., 1953, 205 F.2d 915; Kaufman v. Wolfson, D.C.S.D.N.Y.1956, 137 F.Supp. 479.

The original complaint was verified by Dalva alone who now seeks to be dropped as a party plaintiff. The third ground of opposition relied upon by the defendant is bottomed upon this request. See Fed.Rules Civ.Proc. rule 21, 28 U.S. C.A. The moving papers were not accompanied by an amended complaint on the theory, presumably, that one was not necessary since intervenors expressly adopted the original complaint. This practice received approval in Toebelman v. Missouri-Kansas Pipe Line Co., 7 Fed. Rules Serv. 23 c. 1, case 3 (D.C.Delaware 1943); see also United Railroad Operating Crafts v. Wyer, 18 Fed.Rules Serv. 19 b. 1, case 2 (S.D.N.Y.1952). If Dalva is allowed to be dropped and the complaint is not verified by at least one of the remaining plaintiffs, Fed.R.Civ.P. 23(b), would be contravened.

Motion granted in all respects. Plaintiffs are directed to file a verified amended complaint within 20 days.