Harry J. STADIN, Appellant,

v.

UNION ELECTRIC COMPANY et al., Appellees.

No. 17104.

United States Court of Appeals Eighth Circuit.

Nov. 15, 1962.
Rehearing Denied Dec. 26, 1962.

J. Raymond Dyer, St. Louis, Mo., for appellant.

Alan C. Kohn, St. Louis, Mo., for appellees Union Electric, Missouri Power & Light Co. and Missouri Edison Co.; John A. Woodbridge, Coburn, Croft & Cook, Thomas L. Croft, Peter W. Herzog, Jr., St. Louis, Mo., on the brief.

Before SANBORN and BLACKMUN, Circuit Judges, and REGISTER, District Judge.

BLACKMUN, Circuit Judge.

This is an appeal arising out of the district court's denials of Harry J. Stadin's motions to intervene as a party plaintiff in two civil antitrust cases in which Union Electric Company is an original plaintiff.[1]

Union is a utility engaged in the business of generating and furnishing electricity. The defendants Westinghouse Electric Corporation, General Electric Company and Sangamo Electric Company are electrical equipment manufacturers. Stadin, the applicant for intervention, is a minority shareholder of Union.

The progenitors of these cases are judgments of conviction entered in February 1961 against these defendants and others in federal criminal antitrust proceedings in the United States District Court for the Eastern District of Pennsylvania. The offenses there charged, and to which the defendants pleaded either guilty or nolo contendere, had to do with conspiracy and price rigging in the sale of electrical equipment.

On December 26, 1961, Union instituted the first of the two present actions. It is brought under § 4 of the Clayton Act, 15 U.S.C. § 15, for a claimed violation of § 1 of the Sherman Act, 15 U.S.C. § 1, and is against Westinghouse and General Electric. By it Union seeks threefold damages allegedly resulting from overcharges in the sales of turbine-generators to Union by the respective defendants. On January 31, 1962, Union and Missouri Power & Light Company and Missouri Edison Company, which also are utilities engaged in the business of generating and furnishing electricity, instituted the second action. This is brought under the same sections of the Clayton and Sherman Acts and is against Westinghouse, General Electric and Sangamo for threefold damages allegedly resulting from overcharges in sales by the respective defendants to the plaintiffs and their predecessors of watt-hour and rate-of-demand meters.

Stadin's motions to intervene followed in February and March. His motion in the second case is directed only to Union's count in that action. Stadin rests each motion on the grounds that Union's representation of his interest is or may be inadequate and that he is or may be bound by a judgment in the action, within the meaning of Rule 24(a) (2),[2] F.R. Cv.P., having to do with intervention of right, and that his claims and Union's have questions of law and fact in com-

---

1. The district court initially denied Stadin leave to intervene in the first of these cases by an order expressing the opinion required by 28 U.S.C. § 1292(b) as a condition of this court's discretionary allowance of an appeal from an order not otherwise appealable under that section. We denied Stadin permission to take that appeal but did so without prejudice to any rights he may otherwise have.

Thereafter the district court entered an order denying Stadin leave to intervene in the second case. By that same order, however, the court consolidated both cases for purposes of appeal and found that Stadin's claim was a shareholders' class claim for damages in addition to those sought by

Union in the main actions and that the situation was thus one of multiple claims. It then made the express determination prescribed by Rule 54(b), F.R.Cv.P., as to no just reason for delay and entered judgment against Stadin. The appeal therefore is from the final decision in each case denying Stadin leave to intervene.

2. Rule 24. "(a) Intervention of Right. Upon timely application anyone shall be permitted to intervene in an action: * * * (2) when the representation of the applicant's interest by existing parties is or may be inadequate and the applicant is or may be bound by a judgment in the action * * *."

mon, within the meaning of Rule 24(b) (2),[3] having to do with permissive intervention.

As required by Rule 24(c), each of these motions is accompanied by a pleading. This is called an "Intervenor's Complaint". Each complaint incorporates by reference Union's own allegations. Each also contains certain allegations in common with Stadin's other complaint and additional allegations directed to the particular main action. The allegations are as follows:

a. Stadin owns 43 of Union's 11,402,622 common shares outstanding. There are also outstanding 533,595 voting preferred shares of Union.

b. In February 1961 Stadin submitted to Union's directors, for their action and for action by Union's shareholders at their annual meeting the following April, a proposed resolution[4] that Union "take appropriate steps" against its electrical equipment suppliers who had been convicted in the federal criminal actions in Pennsylvania.

c. Union's directors refused to include this proposal among the proxy material sent to Union's shareholders for the annual meeting. The reason they assigned for this refusal was that the proposal was not a proper subject for action by the shareholders under Missouri law.

d. Stadin himself then submitted the proposed resolution at the April meeting. Members of Union's board of directors spoke out against it and they and management's proxy agents voted against it. The resolution was defeated by a share vote of 10,325,766 to 1,825.

e. Four days later Stadin advised Union's president that unless Union undertook to pursue its legal rights against the price-fixers Stadin himself would seek legal remedy, on behalf of the company and of those who voted with him, in a shareholder's derivative suit or suits.

f. Although Union, since December 1961, has filed Clayton Act suits against various defendants for damages sustained through price-fixing of electrical equipment in eight different categories, including the two involved in the main actions here, it has not yet brought suit for damages resulting from purchases of equipment in eleven other categories with respect to which the defendants were similarly indicted and convicted in the Pennsylvania federal court on pleas of guilty or nolo contendere.

It is then alleged that Union's directors, by opposing Stadin's resolution, voted against the bringing of suits against the defendants; that the later institution of suits for certain categories of equipment did not constitute a retraction of their refusal to bring suit for the other equipment categories; that the directors have condoned the sale to Union of this other equipment at rigged prices; that this was not in good faith and was a breach of trust; and that John A. Woodbridge, "Union's principal attorney in the main action", inadequately represents Stadin because he is one of the directors who "voted against bringing the main action", is "not on friendly terms with" Stadin, stands charged by Stadin with having made illegal profits in the purchase and sale of Union's stock rights in 1959, and has characterized that charge

3. Rule 24. "(b) Permissive Intervention. Upon timely application anyone may be permitted to intervene in an action: * * * (2) when an applicant's claim or defense and the main action have a question of law or fact in common. * * * In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties."

4. "Resolved, that the Company take appropriate steps in pursuit of all its legal

rights, including its right to triple damages under the Clayton Act, against any of those of its electrical equipment suppliers who were recently convicted of antitrust law violations by U. S. District Judge J. Cullen Ganey, in Philadelphia, so as to achieve for the Company reimbursement of the difference between the illegal price it paid such suppliers for electrical equipment sold to it, and the fair market value of such equipment at the time it was bought."

as malicious. Each complaint asserts on information and belief that Union sustained damages "running into the millions of dollars" because of the fixing of prices of electrical equipment not covered by the main actions.

The complaints conclude with prayers for judgment in favor of Union and against the defendants in amounts equal to threefold the damages sustained by Union in the sales to it of equipment in the categories other than those which Union's pending actions concern.

Union opposed Stadin's intervention by memorandum and three supporting affidavits. The latter are executed, respectively, by Union's executive vice-president; by Woodbridge, who is its vice-president and general counsel; and by one of Union's independent attorneys. These affidavits contain, among other things, statements that Union has 64,400 common shareholders and 7,000 preferred shareholders; that Union has been investigating purchases made by it from the suppliers against whom antitrust suits were instituted by the United States; that the indictments of the defendants related to twenty categories of equipment; that purchases in the categories not yet sued upon "involve literally thousands of items * * * and purchases from many corporations besides those named as defendants"; and that after the investigation has been completed Union's management, with advice of counsel, will decide whether suit should be brought as to the remaining categories. Woodbridge's affidavit also states that Stadin's proposed resolution had been submitted initially to the Securities and Exchange Commission which advised that "it would not take any action if the management should omit the proposal from the proxy statement"; that he is not on unfriendly terms with Stadin; and that their relationship is so remote that he cannot be described as either friendly or unfriendly.

Stadin thereafter also filed an affidavit. In it he states that he is an attorney; that at the 1961 meeting two shareholders expressed opposition to his resolution because bringing suit would be wasting money; that Union's president then said that suits would cut into research and developmental programs of suppliers and would be detrimental to the industry of which Union was a member; that the shareholders were not advised that the resolution was not a proper one for shareholder action under Missouri law; that he was not on friendly terms with Woodbridge; that "My feeling about him, not his about me, is what counts"; that he is not satisfied with Woodbridge; that Woodbridge represents his own interests and the interests of management and does not represent the interests of Union's shareholders; that in his opinion it would be more efficient and more effective if Union filed its suits by defendants rather than by items of equipment; that intervention would result in no confusion, complexity or delay but denial of intervention would; and that if intervention is granted he would allocate his claims among the existing suits so that there would be no duplication of claims being sued upon.

Stadin also testified at the hearing on the motions to intervene. His testimony there was simply that the recitals in his complaint and affidavit were true. No cross-examination was undertaken and there was no further testimony.

A second affidavit from Woodbridge was then filed. This incorporated those parts of the transcript of the 1961 shareholders' meeting which included the comments of the two shareholders and the responsive remarks of Union's president. Stadin then filed another affidavit asserting that the statements made at the meeting were not under oath and were hearsay.

It is in this state of the record that the appeal comes to us.

Stadin's argument here, as we read his briefs, is that the conditions for his intervention as a matter of right under Rule 24(a) (2) have been met and the denial of intervention is reversible error; that the conditions for his permissive

intervention under Rule 24(b) (2) have also been met and the denial of intervention is an abuse of discretion; that the recent case of Rogers v. American Can Co., 3 Cir., 1962, 305 F.2d 297, is authority for the right of a minority shareholder, in the face of a contrary vote by the majority, to institute a shareholder's derivative suit for threefold damages under the Clayton Act; and that the Rogers case governs the present appeal.

█ One point must preliminarily be made. In Kozak v. Wells, 8 Cir., 1960, 278 F.2d 104, 109, this court said that, for purposes of judging the satisfaction of the conditions for intervention of right.

> "[W]e look to the pleadings, that is, to the motion for leave to intervene and to the proposed complaint or defense in intervention, and, absent sham and frivolity, we accept the allegations in those pleadings as true. * * * Whether the allegations are eventually proved is beside the point for we are now concerned only with the question of right to intervene and not with ultimate results on the merits."

We cited, in support of this, Otis Elevator Co. v. Standard Constr. Co., D.Minn., 1950, 10 F.R.D. 404, 406; Kaufman v. Wolfson, S.D.N.Y., 1956, 137 F.Supp. 479, 481; Clark v. Sandusky, 7 Cir., 1953, 205 F.2d 915, 918; and Dalva v. Bailey, S.D.N.Y., 1957, 158 F.Supp. 204, 207.

Our quoted language, however, does not mean that, for the purposes described, all statements in pleadings of this kind are to be accepted as true irrespective of their nature or content. The situation is somewhat akin to that presented on a motion for summary judgment or on a motion to dismiss, namely, that only matters well pleaded (as the Otis and Clark opinions specifically state) are entitled to the preferential status of assumed truth. Conclusory statements are not. See 4 Moore's Federal Practice §

24.14; Pacific States Box & Basket Co. v. White, 1935, 296 U.S. 176, 185, 56 S. Ct. 159, 80 L.Ed. 138; Straus v. Foxworth, 1913, 231 U.S. 162, 168, 34 S.Ct. 42, 58 L.Ed. 168; Dyer v. Gallagher, 6 Cir., 1953, 203 F.2d 477, 479. Further, our language does not imply that the district court and this court may not consider allegations in pleadings and affidavits of the opponents to intervention to the extent that they, too, are well pleaded and supply uncontroverted and material facts. When so limited, this is not trial by affidavit. Stadin in effect acknowledges this by indulging in the filing of his own responsive affidavit.

We make the following observations:

a. What Stadin seeks is the institution of litigation in the eleven remaining categories of equipment. He would accomplish this by the addition, through intervention, of new causes of action in the two pending suits.[5] This is in contrast with the more common situation where intervention is sought on existing counts.

b. Stadin makes no attempt to intervene in the turbine-generator and meters categories as such. As to these he makes no request for additional relief and does not even reiterate the prayers which Union embodies in its complaints. Considering these two categories alone and isolatedly, Stadin thus makes no claim of inadequate representation or of possible binding effect of judgments and could be regarded as being satisfied with Union's representation there.

c. Stadin's claim of possible binding effect of judgments to be rendered in the turbine-generator and meters issues then comes down to nothing more than an argument that adverse judgments in these categories will have, by reason of their precedential status, a serious and untoward effect in the others.

d. Stadin's claim of inadequate representation comes down to assertions that Union, by not having instituted litigation in the remaining categories, is not

---

5. See as to this, under Rule 24(b), Kind v. Markham, S.D.N.Y., 1945, 7 F.R.D. 265, 266; Owen v. Paramount Productions, S. D.Cal., 1941, 41 F.Supp. 557, 561.

even representing itself and thus is not representing Stadin at all; that absence of representation does not constitute adequate representation; that Woodbridge does not and cannot adequately represent Stadin; and that separation of suits by defendants rather than by equipment categories is more effective.

With these observations the insufficient character of Stadin's posture for intervention in these actions becomes apparent.

■ 1. *Intervention of right—the effect of the judgment.* That an applicant for intervention of right under Rule 24(a) (2) "is or may be bound by a judgment in the action" is an obvious prerequisite. This is apparent from the very language of the Rule. We have heretofore so held. Kozak v. Wells, supra, pp. 108–109 of 278 F.2d; Pennington v. Missouri Pac. R. R., 8 Cir., 1956, 239 F.2d 332, 334.

■ Stadin's complaints in intervention reflect that the thirteen categories, that is, turbine-generators, meters, and the eleven not sued, concern different kinds of equipment. The complaints assert, either directly or through their incorporation of the allegations of the main complaints, that each defendant pleaded guilty or nolo contendere, as the case may be, as to the respective categories. All this is a demonstration on the face of Stadin's pleadings alone that the issues are several in number and are varied as to factual background. This casts doubt on any claim that a judgment in one category will possibly operate with binding effect in another. But in his brief Stadin asserts, "If defendants successfully defended in the main cases appellant would have great difficulty in independently establishing their liability on his claims". This, as we have noted, is Stadin's basic argument on the effect-of-the-judgment feature.

We had occasion in Kozak v. Wells, supra, to consider the significance of the language in Rule 24(a) (2). We there concluded, pp. 110–111 of 278 F.2d, that we preferred to give the word "bound" a utilitarian and realistic interpretation and not a narrow one, that the words "may be" in the Rule indicate the judgment need not always operate as res judicata, that the Rule generally was to be given a liberal interpretation, and that "perhaps each case is to be decided and explained largely on its own facts". Cf. International Mortgage & Investment Corp. v. Von Clemm, 2 Cir., 1962, 301 F. 2d 857, 861–862.

Liberality, however, does not equate with rights of indiscriminate intervention. The applicant must still meet the requirement that he "is or may be bound" by the judgments. The consequences of adverse judgments in the main actions are not nearly so evident here as they were in Kozak v. Wells, with the presence of factors (legal effectiveness of attacks against a state court order and judgment; existence and propriety of the defendants' acts) which we there specifically pointed out. Here there is only "great difficulty". The Supreme Court, in a case decided since Kozak v. Wells, has stated:

> "Second, appellants argue that even should they not be legally precluded from bringing a private action, nevertheless the very existence of the outstanding decree would as a matter of comity either preclude further relief or operate to limit the relief some future equity court might decree. * * * [T]here is considerable weight to the argument that the court would feel constrained as a matter of comity at least to build on the foundations of the present decree. * * * However, it is abundantly clear that this effect is not at all the equivalent of being legally bound, which is what must be made out before a party may intervene as of right." Sam Fox Publishing Co. v. United States, 1961, 366 U.S. 683, 694, 81 S.Ct. 1309, 1315, 6 L.Ed.2d 604.

The presence or possibility of difficulty, even great difficulty, is not enough.

■ 2. *Intervention of right—adequacy of representation.* That repre-

sentation of the intervention applicant's interest "by existing parties is or may be inadequate" is another obvious prerequisite for intervention of right under Rule 24(a) (2). This also is apparent from the very language of the Rule. Again, we have heretofore so held. Kozak v. Wells, supra, pp. 108–109 of 278 F.2d; Pennington v. Missouri Pac. R. R., supra, p. 334 of 239 F.2d. If the representation "may be" inadequate, that itself is enough. Ford Motor Co. v. Bisanz Bros., 8 Cir., 1957, 249 F.2d 22, 28.

■ The representation, the adequacy of which is to be determined here, is that of Union viz-a-viz the interest of Stadin as a shareholder of Union. Two leading commentators on federal practice have said that inadequacy of representation is or may be shown by proof of collusion between the representative and an opposing party, by the representative having or representing an interest adverse to the intervener, or by the failure of the representative in the fulfillment of his duty. 4 Moore's Federal Practice § 24.-08, pp. 38–39; 2 Barron & Holtzoff, Federal Practice and Procedure (Wright Revision), § 597, pp. 381–82. See also Farmland Irrigation Co. v. Dopplmaier, 9 Cir., 1955, 220 F.2d 247, 248–249; Bisanz Bros. Inc. v. Chicago-Milwaukee-St. Paul & P. R. R., D.Minn., 1957, 20 F.R.D. 353, 354, vacated on other grounds, Ford Motor Co. v. Bisanz Bros., supra, 249 F.2d 22; S. C. Johnson & Son v. Boe, E.D.Pa., 1960, 187 F.Supp. 517, 519; Kind v. Markham, supra, S.D. N.Y., 1945, 7 F.R.D. 265, 266.

■ The allegations in Stadin's pleadings embrace no charge of collusion; they speak of management's voting against the Stadin resolution and they charge that this bespeaks condonation and bad faith. These latter characterizations are only the pleader's conclusions. Billings Utility Co. v. Advisory Committee, Board of Governors, 8 Cir., 1943, 135 F.2d 108, 112; Marranzano v. Riggs Nat'l Bank, 1950, 87 U.S.App.D.C. 195, 184 F.2d 349, 351.

Neither do we find anything of substance in Stadin's pleadings as to Union's having an adverse interest to that of Stadin. The claimed adversity centers in Woodbridge and in the allegations that he "is not on friendly terms with" Stadin; that he "voted against bringing the main action"; that he stands charged by Stadin before the S.E.C.; and that he called that charge malicious. These, however, do not equate with Union's having an interest adverse to Stadin. Furthermore, we fail to see the relevancy on this issue of the allegations as to the short swing profits, the charge of malice, and the lack of friendliness to Stadin. The allegation that Woodbridge voted against the main actions is an obvious over-interpretation of his vote against the Stadin resolution and, in any event, is largely disproved by Woodbridge's having signed the complaint as one of the attorneys for Union in each main action. Woodbridge is only one of several counsel for Union. It is unrealistic and too much to demand that each lawyer for a corporation be on affirmatively friendly terms with each shareholder. We cannot escape the conclusion that Stadin's complaint as to inadequacy of representation lies largely in the area of asserted disagreement between lawyers as to how litigation should be conducted. Mere difference of opinion among attorneys is not of itself inadequate representation within the meaning of the Rule. If it were, intervention of right would become almost automatic.

Finally, we see no failure of Union as yet in the fulfillment of its duty. There is nothing along this line charged here with respect to the main claims. Nonfeasance, if it exists, is asserted as to the categories not sued upon. What we say below with respect to Union's refusal to act is equally pertinent here. Union must be given a reasonable opportunity to act before nonfeasance or neglect of duty within the concept of inadequate representation appears from the pleadings.

On the factor of unfriendliness of counsel our attention is called, with em-

phasis, to United States v. C. M. Lane Lifeboat Co., E.D.N.Y., 1938, 25 F.Supp. 410. This was an action by the government to recover, from its supplier and the latter's performance bond surety, damages which the government had been compelled to pay for infringement of a patent embodied in the goods supplied. An officer of the supplier sought to intervene. He alleged that he and another officer, as a condition precedent to the surety's issuance of the bond, executed an indemnity agreement in favor of the surety. The petition to intervene disclosed that the supplier and the surety retained the same attorney and alleged that the intervener and that attorney were not on friendly terms. The court observed that any judgment rendered against the surety would enable it to proceed against the intervener indemnitor and that the judgment, though not directly binding the intervener, would do so indirectly. This is the heart and the significance of the case. The court did go on to observe, p. 411 of 25 F.Supp.,

> "Then too, there is something to be said as to the adequacy of the representation of his interest. He says that he is not on friendly terms with the attorney who in effect is representing his interest."

This, it seems to us, is no more than an embellishment upon the basic holding that it was the contingent liability of the intervener which warranted intervention.

We recognize that the Lifeboat case has been said to be authority for intervention based upon unfriendliness of counsel of record. See, for example, 2 Barron & Holtzoff, Federal Practice and Procedure (Wright Revision), § 597, p. 381, and Farmland Irrigation Co. v. Dopplmaier, supra, p. 249 of 220 F.2d. These are mere references, however, and we suspect they overstate the authority of the Lifeboat case.

■ We therefore conclude that there is not enough here to demonstrate either the possible binding effect of judgments in the main actions or the possible in-

adequacy of representation and that Stadin is not entitled to intervention of right.

■ 3. *Permissive intervention.* Having reached this conclusion as to intervention of right we need not tarry long with the district court's denial of permissive intervention under Rule 24(b) (2). It has been indicated that an order denying permissive intervention is not appealable unless there is abuse of discretion. Brotherhood of Railroad Trainmen v. Baltimore & O. R. R., 1947, 331 U.S. 519, 524–525, 67 S.Ct. 1387, 91 L.Ed. 1646. This court has commented upon this approach in Pennington v. Missouri Pac. R. R., supra, p. 335 of 239 F.2d, and particularly in Ford Motor Co. v. Bisanz Bros., supra, pp. 26–27 of 249 F.2d. In any event, the Rule itself directs that in the exercise of its discretion the court "shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties."

It seems unquestionably clear to us from the pleadings of the intervener that his desired incorporation in the main actions of the several additional equipment categories will bring into these lawsuits added complexity; the inevitable problems attendant upon additional witnesses, interrogatories and depositions; expanded pretrial activity; greater length of trial; and elements of confusion. These in themselves suggest delay and the clouding of the issues involved in the original causes of action. More than one trial court has observed that "Additional parties always take additional time" and that "they are the source of additional questions, objections, briefs, arguments, motions and the like which tend to make the proceeding a Donnybrook Fair." Crosby Steam Gauge & Valve Co. v. Manning, Maxwell & Moore, D.Mass., 1943, 51 F.Supp. 972, 973; First Congressional Church, etc. v. Evangelical and Reformed Church, S.D.N.Y., 1958, 21 F.R.D. 325, 327–328; Wilson v. Illinois Central R. R. Co., N.D.Ill., 1957, 21 F.R.D. 588, 589.

■ We cannot hold that the district court's denial of permissive intervention here was an abuse of the discretion possessed by the court under Rule 24 (b) (2). Compare Sutphen Estates v. United States, 1951, 342 U.S. 19, 23, 72 S.Ct. 14, 96 L.Ed. 19.

4. *The derivative action aspects.* Stadin in his briefs has characterized his motions to intervene as class motions filed, under Rule 23(b), F.R.Cv.P., to enforce shareholders' secondary rights. We need not pass upon the narrow procedural question whether a derivative action may properly be instituted through the device of intervention. We assume for present purposes that it may. But, having made that assumption, we fail to find upon this record that Stadin has met the conditions required for a federal derivative suit.

■ These conditions are several in number but Rule 23(b) itself clearly embraces four which are applicable to the situation here: (a) that the corporation possess rights which it may properly assert and enforce; (b) that the plaintiff shareholder make a demand upon the corporation to enforce those rights; (c) that the corporation refuses so to do; and (d) that the plaintiff's complaints set forth with particularity his efforts to secure corporate action and the reasons for his failure so to obtain such action or for not making such effort. See Quirke v. St. Louis-San Francisco Ry., 8 Cir., 1960, 277 F.2d 705, 707–708, cert. den. 363 U.S. 845, 80 S.Ct. 1615, 4 L.Ed. 2d 1728, and 13 Fletcher, Private Corporations (1961 Revision) §§ 5970, 6008. A fifth condition, which Stadin in his brief concedes still to be "the sine qua non of the stockholder's derivative right to sue", is that management be guilty of conduct equivalent to bad faith or breach of trust. United Copper Sec. Co. v. Amalgamated Copper Co., 1917, 244 U.S. 261, 263–264, 37 S.Ct. 509, 61 L. Ed. 1119; Ashwander v. Tennessee Valley Authority, 1936, 297 U.S. 288, 319, 343, 56 S.Ct. 466, 80 L.Ed. 688; Hawes v. Oakland, 1881, 104 U.S. 450, 460–461, 26 L.Ed. 827; Heinz v. National Bank of

Commerce, 8 Cir., 1916, 237 F. 942, 948–949. Otherwise management possesses a wide discretion in determining a corporation's business policies and the methods of executing them. This discretion extends to litigation and to a decision to sue or not to sue. Merrill v. Davis, 1950, 359 Mo. 1191, 225 S.W.2d 763, 768. See Swanson v. Traer, 7 Cir., 1957, 249 F.2d 854, 858–859. It extends even to the settling of an antitrust claim. Post v. Buck's Stove & Range Co., 8 Cir., 1912, 200 F. 918, 920. See Sam Fox Publishing Co. v. United States, supra, p. 689 of 366 U.S., p. 1313 of 81 S.Ct.

■ The demand Stadin made was that a resolution be adopted that Union take "appropriate steps in pursuit of all its legal rights" against the convicted suppliers so as to achieve reimbursement for the price differentials. This was followed by a statement that if Union did not undertake to pursue those rights Stadin himself would seek a legal remedy. An outright demand to take "appropriate steps" is not necessarily equivalent to a demand that Union institute suit for the remaining categories. The term "appropriate steps" is broad and, although it is channeled here to Clayton Act threefold damages, it may well embrace steps which are short of actual suit. It may include investigation, the determination whether rights of action exist at all, negotiations, settlement and, under appropriate circumstances, even a decision not to sue. Furthermore, Union's refusal to comply with any demand to sue is not apparent. The shareholders did reject the resolution and to that extent refused to comply with the proposal from Stadin. But litigation was subsequently instituted as to eight categories. And we cannot conclude that the absence of litigation as to the remaining categories up to the time of the filing of the motions to intervene constitutes a positive and unwarranted refusal.

Finally, we find nothing in the pleadings which qualifies as a breach of trust or the like as required by United Copper and other cases cited above. Stad-

in's claims are (a) that the directors' opposition to his resolution was a vote against suing the defendants and (b) that the directors have condoned the sale of equipment in the other categories at rigged prices. We are not convinced that the directors' opposition to the resolution was a vote against suit. Time is necessary for the investigation, development and preparation of litigation. Suits in eight categories of equipment have already been instituted. The remaining categories are under investigation. This is not condonement or breach of trust.

Stadin presses upon us, however, the recent case of Rogers v. American Can Co., supra, 3 Cir., 1962, 305 F.2d 297, where, despite a vote against the suit by a majority of a corporation's shareholders, it was held that a minority shareholder could maintain a Clayton Act treble damage action against the directors and the corporation's supplier. There, however, the plaintiff's charge was that his corporation was a captive through the conspiratorial activities of its controlling directors and a substantial shareholder and chief supplier. Under these circumstances, the court said, p. 317 of 305 F.2d:

> "The business judgment character of the stockholders' determination, generally effective to definitively terminate intracorporate controversies, must yield to the right of a minority stockholder to expose his charges of violations of positive law * * *."

Except in an extreme and unusual situation of that kind, we do not interpret Rogers as denying the authority of United Copper and its companion cases and, indeed, the language we have quoted so indicates. Neither do we regard the case as indicative of a new and nationwide public policy, as Stadin argues.

We find no comparable situation charged in the pleadings before us. There is no allegation that Union is in any way a captive or that its directors or management have engaged in conspiratorial activities with any of the convicted defendants. The remark of Union's president at the 1961 meeting to the general effect that treble damage suits could possibly weaken the whole group of suppliers so that it would affect adversely the industry's research hardly qualifies as a conspiratorial element. He named it as a worrisome fact and nothing more. The same is true as to the response of the president to the statements of the two shareholders. His remarks are only acknowledgments of the shareholders' comments and a statement of appreciation for them. They do not constitute, as Stadin would have us interpret them, expressions of interest "to protect the price-fixers, and through them the 'industry', not Union's stockholders and consumers". What is charged here does not take these cases out of the general rule and into any area to which the Rogers case is conceivably applicable.

These Clayton Act cases which are arising out of the 1961 Philadelphia convictions will prove complicated enough in themselves. They will become much more complicated if shareholders are allowed to intervene upon showings of no more substance than is contained in Stadin's complaints here. As Mr. Justice Jackson said, dissenting in another context in State of New Jersey v. State of New York, 1953, 345 U.S. 369, 375, 73 S.Ct. 689, 692, 97 L.Ed. 1081, "it is generally bad policy to encumber any case with unnecessary intervenors."

Stadin, of course, presumably wants only that Union have adequate protection and representation and that it recover that which, if anything, is due from the suppliers and which may be obtained with a return, net, to the company. If this is fairly assured, intervention seems not to be warranted. On this record and at this time, we think there is fair assurance.

The district court's denials of the motions to intervene were not improper. So far as its order pertains to intervention under Rule 24(a) (2), it is affirmed. So far as it concerns intervention under Rule 24(b) (2), the appeal therefrom is dismissed.