ALFRED J. ROACH et al., Individually and as Stockholders of MARY'S SUNSHINE DAIRIES, INC., Suing on Behalf of Themselves and All Other Stockholders Similarly Situated, Respondents, *v.* FRANCHISES INTERNATIONAL, INC. et al., Defendants; and MARY'S SUNSHINE DAIRIES, INC., Appellant.

Second Department, June 2, 1969.

*Kronish, Lieb, Shainswit, Weiner & Hellman* (*Seymour Shainswit, Walter H. Weiner* and *David N. Ellenhorn* of counsel), for appellant.

*Keating & Brodkin* (*Albert H. Brodkin* of counsel), for respondents.

HOPKINS, J. In this stockholders' derivative action, the plaintiffs allege that certain named individuals and corporations conspired to acquire the majority control of Mary's Sunshine Dairies, Inc. (the appealing defendant and hereinafter referred to as the corporation), to exploit its business in violation of contractual and fiduciary obligations, and to transfer its assets in deprivation of the rights of the minority stockholders, among whom are the plaintiffs. We need not concern ourselves with the particulars of the allegations, for the narrow question presented is whether Special Term was correct in denying the corporation's motion for security under section 627 of the Business Corporation Law.

At the time of the commencement of the action, the plaintiffs were the owners of more than 5% of the stock of the corporation. Thereafter, according to the corporation, its board of directors determined to issue additional stock "in order to raise funds to pay amounts owing by the corporation to a bank, and for current operating expenses." By the terms of the resolution of the directors, each stockholder was authorized to purchase eight shares of the new issue for each share held by him, at a price of 40 cents a share. The plaintiffs did not purchase any shares of the new issue. However, 312,500 shares of Class A stock were sold pursuant to the offer to the stockholders.

The corporation claimed that as a result of these transactions the plaintiffs' stockholdings were less than 5% of its outstanding stock. Specifically, the corporation said that there were outstanding 360,184 shares of Class A stock and 500 shares of Class B stock, of which the plaintiff Alfred Roach was the owner of 3,717 shares of Class A stock and the plaintiff Dorothy Roach the owner of 4,000 shares of Class A stock. Thus, the corporation contended, the plaintiffs' aggregate stockholdings were 2.14% of the outstanding Class A stock.

Moreover, the corporation contended that as there was no market for the stock, and as the most recent corporate financial records showed a capital deficit and a substantial net operating loss, the plaintiffs' shares were worth far less than $50,000. Upon the basis of these claims, the corporation moved for security under the provisions of section 627 of the Business Corporation Law. The motion was denied by the order under review.

The plaintiffs' response to the application for security essentially challenged the good faith of the management of the corporation and the accuracy of its statement of the stockholdings of the plaintiffs. First, the plaintiffs asserted that the true purpose of the additional stock issue was not to discharge a bank loan, but to dilute the plaintiffs' interests in the corporation. Second, they claimed an aggregate stock ownership of 82,167 shares of Class A stock, sufficient to defeat the corporation's motion for security.

The corporation's rebuttal put into issue both of these claims. It reiterated the corporate necessity of raising new capital to retire the bank loan and it contradicted the amount of stock which the plaintiffs said that they held. Indeed, as the corporation alleged, the plaintiff Alfred Roach had voted at a stockholders' meeting in favor of a resolution dividing the number of shares owned by each stockholder by 10, in order to reduce

the total par value of the subscribed shares to less than the paid-in capital of the corporation.[1]

We outline the opposing claims of the parties in some detail merely to indicate that on this record factual questions arise which would warrant a remand for an evidentiary hearing (cf. *Amdur* v. *Meyer*, 22 A D 2d 655), if we reach the point of finding that the determination of these questions is crucial. In our view of the statute (Business Corporation Law, § 627) however, those questions need not be resolved.

Section 627 of the Business Corporation Law (derived from General Corporation Law, § 61-b) provides that in a shareholders' derivative action the corporation " shall be entitled at any stage of the proceedings before final judgment " to the posting of security for its expenses in the action, unless the stock owned by the plaintiffs either constitutes more than 5% of any class of the outstanding stock or has a fair value of more than $50,000.[2] The undisputed fact is that the plaintiffs owned more than 5% of the Class A stock at the inception of the action; only because the corporation saw fit to issue new stock (assuming the validity of the transaction) could the plaintiffs' holdings now fall below the amount stipulated in the statute. We do not think that under these circumstances the statute compels the posting of security. We come to this conclusion after a consideration of the purposes of the statute and the effect a contrary result would direct.

---

1. In an affidavit later submitted by the plaintiff Alfred Roach, he denied that any resolution had ever been adopted reducing the number of shares to 10% of their previous number.

2. The statute reads in full as follows: " § 627. Security for expenses in shareholders' derivative action brought in the right of the corporation to procure a judgment in its favor. In any action specified in section 627 (Shareholders' derivative action brought in the right of the corporation to procure a judgment in its favor), unless the plaintiff or plaintiffs hold five percent or more of any class of the outstanding shares or hold voting trust certificates or a beneficial interest in'shares representing five percent or more of any class of such shares, or the shares, voting trust certificates and beneficial interest of such plaintiff or plaintiffs have a fair value in excess of fifty thousand dollars, the corporation in whose right such action is brought shall be entitled at any stage of the proceedings before final judgment to require the plaintiff or plaintiffs to give security for the reasonable expenses, including attorney's fees, which may be incurred by it in connection with such action and by the other parties defendant in connection therewith for which the corporation may become liable under this chapter, under any contract or otherwise under law, to which the corporation shall have recourse in such amount as the court having jurisdiction of such action shall determine upon the termination of such action. The amount of such security may thereafter from time to time be increased or decreased in the discretion of the court having jurisdiction of such action upon showing that the security provided has or may become inadequate or excessive."

The statute was enacted to meet the evil posed by baseless strike stockholders' suits against corporate directors and stockholders (*Shielcrawt* v. *Moffett,* 294 N. Y. 180, 190; Memorandum of Governor Thomas E. Dewey approving L. 1944, chs. 667, 668 [see Public Papers of Governor Thomas E. Dewey, 1944, p. 255]). The abuse of derivative actions instituted by stockholders having small or miniscule interests in a large corporation, directed not so much to the redress of wrongs by management, but rather to the hope of an award of attorneys' fees or the negotiation of a private settlement, was the target of the statute (Note, Security for Expenses Litigation-Summary, Analysis and Critique, 52 Col. L. Rev. 267). A stockholder motivated by personal gain instead of the welfare of the corporation, it was thought by the sponsors of the legislation, would be deterred from bringing a spurious action, when the onus of the expense incurred by the corporation in defending it would be ultimately cast on the plaintiff as a consequence of the exposure of the action as meritless (*Dalva* v. *Bailey,* 158 F. Supp. 204, 206; 13 Fletcher, Cyclopedia Corporations [1961 rev. vol.], § 5971.3).

On the other side, it was recognized that derivative actions having a legitimate foundation brought by stockholders with substantial interests ought not be curbed, for the actions serve the need of remedying corporate losses brought about by irresponsible management (cf. *Fuller* v. *American Mach. & Foundry Co.,* 97 F. Supp. 742, 744). The balance between the two somewhat conflicting objectives was struck by the interposition of the minimum stockholdings which the statute prescribes.

We cannot say at this juncture of the litigation that the plaintiffs' complaint is so lacking in merit that it must be labeled a " strike suit ", the evil which the statute seeks to control. The question of the merits is not presented to us. We deal here solely with the interpretation of the statute in its application to the plaintiffs at this stage of the action. In its narrowest terms, the question is whether the court must require the plaintiffs to post security, because their stockholdings, sufficient when the action was started, were thereafter reduced below the minimum laid down by the statute as a result of corporate proceedings increasing the outstanding stock.

The corporation urges that the right to security is not dependent on the plaintiffs' status at the beginning of the suit, pointing to the language of the statute that the corporation " shall be entitled at any stage of the proceedings before final judgment " to require the giving of security (Business Corporation Law,

§ 627). We think that this language does no more than permit the making of the application for security by the corporation at any time before judgment and is not an inflexible direction to be followed without regard to the circumstances of the case. If, for example, the plaintiffs in a stockholders' action dispose of so much of their stock after the action is begun that the remainder is less than the requisite amount, the corporation's application for security might well succeed, for the plaintiffs by their own choice altered their original position (cf. *Amdur v. Meyer,* 17 A D .2d 571).

We are not persuaded that our decision in *Richman* v. *Felmus* (8 A D 2d 985), upon which the corporation relies for support of its motion, reflects a construction of the statute compelling the furnishing of security here. In *Richman,* the plaintiffs' stock was not worth $50,000 either on the date of the alleged wrong, on the date of the commencement of the action, on the date of the making of the motion for security, or on the date of the decision of the motion. But its value was greater than $50,000 at the time of the appeal. We considered that the market value of the stock at the time of the appeal was the governing factor by which the right to security should be determined. We followed in *Richman* the construction given the statute by the Court of Appeals that it was not the intent of the Legislature to fetter the continuing discretion of the Supreme Court to modify orders in an action, as circumstances may change (*Matter of Baker* v. *Macfadden Pub.,* 300 N. Y. 325, 329–330).

In short, the language of the statute which the corporation emphasizes merely makes clear that no time limit for the requirement of security is set before the occasion of final judgment. Correspondingly, it does not mean that when the plaintiffs' stock, through no action of their own, was reduced below the number of shares stipulated by the statute, the court was automatically forced to require security.

In our opinion, Special Term correctly denied the corporation's motion for security. A distinction exists in the statute between the two alternate standards by which the requirement of security is tested. The percentage requirement takes into account the proportion of the shares owned by plaintiffs or intervenors measured against the total outstanding shares. During the course of litigation, as we think the authors of the statute contemplated, this proportion may shift as the direct result of the disposition of stock by plaintiffs or intervenors.

In the usual course, therefore, the decrease in their corporate interests is derived from the affirmative act of the parties bringing the suit, the consequence of which they must be prepared to meet by posting security, if they desire to continue the suit. A change in the total stock outstanding — the other term in the statutory fraction — arises during the course of litigation by the act of the corporation, an act with whose legality and soundness the plaintiffs may well differ. For this change in the proportion of stock ownership there is no reason for the plaintiffs to suffer the penalty of posting security, since the diminution in the proportion of their shares flowed from nothing that they did.

The authors of the statute, on the other hand, must be credited with knowing full well that the monetary requirement — the second alternate standard — is subject to almost daily fluctuations of the market; and that neither the stockholders nor the corporation are exclusively responsible for the variations in value. Hence, stockholders, claiming exemption from filing security because of their compliance with the standard of the monetary value of their shares, are properly required to maintain ownership of stock worth at least $50,000 throughout the course of the action.

The purpose of the statute is answered when plaintiffs, meeting the percentage standard at the time of the institution of the suit, conserve their stockholdings thereafter. The balance struck between the policy of discouraging the baseless action for individual gain and the policy of permitting access to the courts for the correction of managerial wrongs would be destroyed if the corporation could alter the proportion by its own action — an alteration conceivably actuated by the selfish or even fraudulent designs of its management.[3]

We do not think, either, that the exercise of the pre-emptive right, of which the plaintiffs, along with the other stockholders, were entitled to the benefit — the purchase of a proportionate share of the new issue — should be required, as a condition to the continued maintenance of the action without the necessity of posting security. If we viewed the right otherwise, it would be tantamount to compelling the plaintiffs to risk the purchase of stock which they might consider to be illegally issued or worthless, in order to avoid the posting of security. The statute cannot have contemplated such a rigorous and burdensome duty on the plaintiffs.

---

3. It will be observed that the plaintiffs claim here that the new issue of stock was intended not for the benefit of the corporation but for the purpose of diluting the plaintiffs' shares.

The order denying the motion for posting of security should be affirmed, with $10 costs and disbursements.

Brennan, Acting P. J., Rabin, Benjamin and Munder, JJ., concur.

Order affirmed, with $10 costs and disbursements.